## CHARLES H. YOUNGER, Jr. vs. THE STATE.

### January Term, 1868.

1. A person indicted for felony must be personally present during the trial therefor, and the record can alone be looked to for the evidence to prove such presence at every stage of the trial.

2. The record must show when and how the jury was selected, tried and sworn.

3. A prisoner indicted for felony should be present in court, and when arraigned should plead in person, and the record should show that fact.

4. If the record should disclose that the jury had been properly sworn, and all the other prerequisites had likewise appeared, yet still the fact appearing that the juror who signed the verdict was other and different from any of the jurors named as having been sworn, and there being no averment that the juror who signed the verdict had been sworn, this of itself would be sufficient to set aside the judgment and verdict.

5. Where a judgment on a verdict of guilty, on an indictment for a felony, is reversed by this court, the prisoner is not entitled to a discharge under the constitutional provision that no person shall be twice put in jeopardy for the same offense.

*Charles H. Younger, Jr.*, was indicted in the circuit court of *Mason* county on the 27th day of August, 1866, for the murder of *Clarissy Younger*. On the 29th day of August, 1866, the prisoner was led to the bar of the court by the jailor of the county of *Mason*, in whose custody he was, and by his counsel moved the court to quash the indictment against him, and each count thereof; which motion, after being maturely considered by the court, was overruled. The prisoner was arraigned and pleaded not guilty to the indictment, and the cause was continued, on motion of the prisoner, by his counsel; and the cause was subsequently continued, on motion of the prisoner, until the 26th day of

*Absent from illness.

February, 1866, on which day, as the record discloses, no order was made in the cause, except the appointment of counsel by the court to attend to the prosecution of the case on behalf of the State, the prosecuting attorney for the county having been previously acting as attorney for the prisoner before his qualification as prosecuting attorney; nor does the record on that day show that the prisoner was present in court.

The next order made in the cause was as follows: "And at another day, to-wit: At a circuit court held for the said county of *Mason*, at the court-house thereof, on Wednesday, the 27th day of February, A. D., 1866. Present *James W. Hoge*, judge of the seventh judicial circuit. *Charles H. Younger, Jr.*, who stands indicted for murder, and was heretofore arraigned thereof, and pleaded not guilty to the indictment, was again led to the bar in custody of the jailor of this county, and thereupon came a jury, to-wit: *Austin Meadows, Wesley Chapman, James Terry, John T. Jordon, David Smith, Mallory Chapman, William Lewis, James W. Pearson, William F. Wallace, P. B. Smith, John Pauline, L. M. Gibson*, and the jury sworn *yesterday* for his trial were brought into court, by the sheriff of this county, and having further heard the evidence, were, with the consent of the said *Charles H. Younger, Jr.*, recommitted to the custody of the said sheriff, who is directed to keep them together without communication with any other person, and to cause them to appear here before the court to-morrow morning at 9 o'clock; whereupon an oath was administered to the said sheriff and jailor of this county to the following effect: 'You shall well and truly keep this jury, to the best of your ability, and neither speak to them yourself nor suffer any one else to speak to them touching any matter relative to this trial until they return into court to-morrow,' and the said *Charles H. Younger, Jr.*, is remanded to jail." The trial was proceeded in on the 28th day of February and on the 1st day of March, on both of which days the record discloses that the prisoner was present at the trial, as also on the second day of March, on which day the following verdict

was rendered by the jury: "We, the jurors, find the prisoner, *Charles H. Younger, Jr.*, guilty of murder in the first degree, as alleged in the indictment.

(Signed)                                P. B. SHIVELY."

On the 5th day of March the prisoner was brought into court and sentence was passed upon him. To the judgment of the circuit court a writ of error was granted to this court.

*G. W. Jeffreys* for the plaintiff in error.
*Attorney General Melvin* for the State.

BROWN, President. By the Code 1860, chap. 208, sec. 3, a prisoner indicted for felony shall be personally present during the trial therefor; and the record can alone be looked to for the evidence to prove such presence at every stage of the trial. 3 Rob. Practice (old), 115 and 178. The record in this case shows that the prisoner was led to the bar and thereupon came a jury, viz: "Austin Meadows," and eleven others whose names are stated. And then proceeds: "And the jury sworn yesterday for his trial were brought into court, and having heard the evidence," &c.

The jury having retired to consider of their verdict, at another day, to wit, &c., "whereupon came Austin Meadows, and eleven other good and lawful men, as the jury heretofore sworn to try the prisoner at the bar," &c., "having agreed on a verdict were discharged, which verdict is as follows: 'We the jurors find the prisoner, Charles H. Younger, guilty of murder in the first degree, as alleged in the indictment.                        P. B. SHIVELY.'"

Thus it appears by the record that the verdict is signed "P. B. Shively," while no such name appears among the names of the jurors as recorded, nor does it appear when or how the jury were selected, tried or sworn, nor does the record show that the prisoner was present in court at the time the jury is said, on a former occasion, to have been sworn, nor does it appear that he was present and pleaded in person when the arraignment is said to have taken place on a for-

mer occasion.    All of which facts must appear by the record, or the conviction would be unlawful.    And if the record had shown that the jury had been properly sworn, and all the other prerequisites had likewise appeared, yet still the fact appearing that the juror who signed the verdict, was other and different from any of the jurors named as having been sworn, and there being no averment that this odd man had been sworn, this of itself would be sufficient to set aside the judgment and verdict.

I think, therefore, that the judgment should be reversed, the verdict set aside, and a new trial awarded to the prisoner, unless it shall be necessary under the constitution to discharge him as claimed by his counsel, on the ground as alleged, that he cannot be again put upon his trial for the same offense.

From the earliest history of Virginia to the present time it has been the constant practice to set aside verdicts and judgments and award new trials to prisoners convicted of misdemeanors and felonies, as well in cases involving jeopardy to life and limb as otherwise.    The cases are numerous.  In *Crump's case*, 1 Virg. cases, 172, it was held, a new trial may be granted after the first term, at any time before judgment.    In *McCaul's case*, 1 Virg. cases, 271, a new trial was granted in a criminal case, because one of the jury separated from the rest, without imperious necessity, unattended by the officer.    In *Mills' case*, 7 Leigh, 751, a new trial was awarded to the prisoner who had been convicted of larceny.    In *Ball's case*, 8 Leigh, 726, a new trial was granted after verdict and judgment for murder.    The prisoner, Alice Ball, a free woman of color, was indicted and tried in the superior court of Westmoreland county for the murder of a white man in 1837.    The jury found a verdict of guilty of murder in the second degree, and ascertained the term of imprisonment in the penitentiary to be five years.    The evidence in the case was entirely circumstantial.    The court was of opinion that it was insufficient to warrant a verdict of guilty, and so before the verdict was received, sent the jury back to their room to reconsider it,

and charged them upon the law and evidence in the case. Nevertheless they persisted in finding the verdict of guilty, which was finally received and recorded. The prisoner thereupon moved the court for a new trial, but the court being of opinion that the power of granting a new trial, in such a case as the present, was clearly denied by the principles and practice of the English law, and was not warranted by any statute of Virginia, or by the authority of any adjudicated case within the knowledge of the court, and believing that such a case was exclusively fit for the interposition of the executive clemency, overruled the motion and pronounced judgment according to the verdict; to which opinion of the court the prisoner excepted. The bill of exceptions set forth the whole evidence, and on the petition of the prisoner to the general court, a writ of error was awarded to the judgment.

Fry, J., delivering the opinion of the court, said: "We therefore proceed to inquire whether it is in the power of the judge, in a case of felony, to grant a new trial after conviction, when he is satisfied that the evidence is utterly insufficient to warrant the finding. It seems to be settled in England, that by the course of the common law, a new trial cannot be granted in any case of treason or felony. If the conviction is improper, the prisoner is respited until a pardon is applied for. In misdemeanors it is otherwise. 1 Chitty's Crim. Law, 653; 8 Wend., 549; 13 East, 416, note b; 3 Black. Com., 387, note by Christian. Is this principle a part of the common law with us, and are the courts of this State bound by it? We are all of opinion that it is not, and that our courts are not bound to follow it. It is believed that a contrary practice has long prevailed in this State. Many new trials are remembered by some of the judges, and we think that this practice is suitable to our constitution and laws, and agreeable to justice and humanity. To grant a new trial on the application of the prisoner cannot be said to be against the maxim, that no one shall twice be put in jeopardy of his life for the same offense. As was said by the solicitor-general in the case of the *Commonwealth vs.*

*Green*, 7 Mass., 525, it is really granting him a privilege which may operate to *save* his life by standing a second trial for it."

"The remedy of a pardon as a substitute for a new trial, falls short of complete justice to the prisoner, as well as to the public. To the prisoner a pardon is not equal to an acquittal—to which the case supposes he is entitled. His reputation and character are much more affected by the one than the other. A pardon discharges from punishment; an acquittal from guilt. Pardon may rescue him from the penitentiary or a halter, but it cannot redeem him from the infamy of conviction. Every one is entitled to a fair and legal trial. If convicted, it should be according to the law. and evidence; and if it be clearly apparent to the court that injustice has been done in its own forum, it would seem to be appropriate and just that the court should redress it. To devolve the duty on the executive, besides that it falls short of complete justice to the prisoner, as before mentioned, is to throw it upon one over whom it has no control, who may leave the injustice in full force. And as Parker, C. J. said in the case last mentioned, 'whatever confidence the court might feel in the executive, they would be unwilling to commit to other hands, in a case affecting life, an error committed by themselves or by others concerned in the trial, the regularity of which they are bound to enforce,' citing 3 Dal., 515; 1 Bay., 372; and 1 Black., 396." In the latter of which cases the court granted a new trial, because the verdict was against the evidence. And the opinion of Parker C. J., in *Green's case*, 17 Mass. 525, supports the view taken by the general court. He said: "That a prisoner who has been tried for a felony and acquitted should not be subjected to a second trial for the same offence, seems consistent with the humane principles of the common law, in relation to those whose lives have been once put in jeopardy. But the same humane principles would appear to require that after a conviction, a prisoner should be indulged with another opportunity to save his life, if anything had occurred upon the trial which rendered doubtful the justice or legal-

ity of his conviction. *Nemo bis debit vexari pro una et eadem causa*, is a maxim of justice as well as of humanity, and was established for the protection of the subject against the oppression of government. But it does not seem a legitimate consequence of this maxim, that one who has been illegally convicted should be prevented from having a second inquiry into his offence, that he may he acquitted if the law and the evidence will justify an acquittal. If the error arises from inadvertency of the judge in rejecting or admitting evidence or from misbehavior of the jury, or other cause, which would be good ground for a new trial in civil actions for misdemeanors, justice and consistency of principle would seem to demand that the person convicted should, upon his own motion, have another trial, instead of being obliged to rely upon the disposition of the court to recommend a pardon, or of the executive power to grant it. It is not enough that the life of the accused will generally be safe in the hands of such highly responsible public agents; the right of the citizen to be tried by his peers according to the forms, as well as the principles of law, is the only certain security that at all times and under all circumstances, that protection which the constitution extends to all, will be effectually enjoyed."

"Besides the injury to the accused in denying a new trial, and giving a resort to the pardoning power only, justice might often be defeated by it. The pardoning power in this State is in its nature and practice more limited than that of the king of England. A new trial might often redress an injury without wholly discharging from punishment; but a pardon would discharge altogether. A person indicted for murder might be convicted of murder in the first degree; it might be clear that this was not right, but that the offense was only manslaughter; if the court could not grant a new trial, the executive must pardon and discharge the prisoner, whereas if a new trial were granted he might meet the punishment due to his proper offense."

" We have a more varied scale of crimes with appropriate punishments than that found in the British Code. At the

time the principle in question was established there that Code was simple and bloody. It was death or nothing for most offenses. It is believed that this difference in our criminal laws, as well as that in the exercise of the pardoning power and the spirit of our institutions, together with a due regard to justice and humanity, fully justify a departure from the English rule."

In *Armistead's* case, 11 Leigh., 657, a new trial was granted for admission of a juror not indifferent.

In *Overbee's* case, 1 Rob., 756, the prisoner was convicted of forgery; a new trial was granted because some of the jurors separated for a few minutes without the presence of the sheriff, but without having communicated with any one.

In *Grayson's* case, 6 Gratt., 713, the prisoner, a free negro, had been convicted of murder in the first degree. The court sentenced him to be hung. He moved for a new trial because the verdict was against evidence, which motion was overruled and he excepted, and the facts proved were spread upon the record. Upon his petition to the general court a writ of error was awarded. The judgment was reversed, the verdict set aside and a new trial awarded. The case was elaborately argued and fully considered and it was held that new trials are grantable at the instance of the accused in all criminal cases; that motions for new trials are governed by the same rules in criminal as in civil cases, and that a new trial will be granted where the verdict is against law, or where it is contrary to the evidence, or where the verdict is without evidence.

Afterwards, on the next trial, in 1850, the prisoner was again convicted of murder in the first degree, and again sentenced to be hung for the same offense. He again moved the court to set aside the verdict and for a new trial, which the court overruled, and he again excepted. The facts were spread upon the record. The prisoner again applied to the general court for a writ of error, which was awarded, and upon the hearing the general court again reversed the judgment and set aside the verdict because there was not evidence to warrant it, and awarded a new trial. See the lat-

ter case of *Grayson*, reported in 7 Gratt., 613, to which is appended a note by the reporter, that, "after the decision of the court granting to the prisoner another trial, an armed mob, in the day time, took him from the jail and hung him, and thus to punish a man whom they suspected of murder they committed murder themselves." So in *Marshall's* case, 5 Gratt., 663, after conviction for unlawful stabbing, a new trial was granted. So also were new trials granted after convictions for felony in *Wormly's* case, 8 Gratt., 712, and *Rand's* case, 9 Gratt., 738.

This review of the cases decided in Virginia shows conclusively that the law is well settled, that a new trial may be granted in a case of felony where the prisoner has been convicted, but not if acquitted. That it is not in conflict, but rather in harmony, with the principle of that just and humane rule that no person shall be twice put in jeopardy for the same offense. Indeed the wisdom, justice, humanity and necessity of the rule is practically illustrated by *Grayson's* cases, and the tragic conclusion as disclosed by the reporter's note to the case. The new trial is often the convicted prisoner's only safe guard left. Deny him that on the plea that he shall not be twice put in jeopardy for the same offense and you stab him to the heart with the weapon intended only for his security and defense. Such a construction of the rule would let him be hung, however innocent, in order to avoid the hazard of life or limb against which he is to be secured by the rule made for his benefit. Judges may be perplexed in giving interpretation and application to the rule, and may stick in the bark in doing so, *hæret in litera hæret in cortice*, but it seems to me that an innocent man, or guilty either, convicted wrongfully and sentenced to be hung, with the halter around his neck, could not be long or doubtful in deciding for himself which construction of the rule was for his interest and necessities, which was in harmony with the spirit of justice and humanity that dictated the rule for the prisoner's safety. The constitution only enacts the rule of the common law, does not change it, so that the interpretation of one is the

interpretation of the other.   The case of the *United States* vs.
*Gilbert and others*, 2 Sumner, 19, decided in the circuit court
of the United States has been much relied on by the pris-
oner's counsel to show that a new trial cannot be awarded
if the judgment be reversed, but that the prisoner must be
discharged.   It might be a sufficient answer to this sugges-
tion, that the case is not sufficient to shake the well settled
rule as shown by the cases reviewed and cited, but even if
tried by that case, there is nothing in it to prevent a new trial
here, or authorize a discharge of the prisoner.   The utmost
that is maintained in that case is that there must be a regular
trial by a lawful jury on a good indictment, and these facts
must, as we have elsewhere seen, appear by the record; but
it has been seen by the record in this case at bar that there
was not a regular trial by a lawful jury.   Instead of being reg-
ular the prisoner was not shown to have been present, nor the
jury to have been elected, tried and sworn, as required by law,
nor does one of them, the juror who signed the verdict, ap-
pear to have been sworn at all, nor his name recorded among
the names of the other jurors, and further, that, counting
him as a juror with the other twelve named as such, there
were then thirteen jurors on the jury which tried and found
the prisoner guilty, so that in neither event was the trial
regular nor by a lawful jury, and the verdict must, there-
fore, be set aside and a new trial awarded to the prisoner,
to be had before the circuit court of Mason county.

Judge MAXWELL concurred.

NEW TRIAL AWARDED.