**Wheeling.**

## THE STATE *v.* CONKLE *alias* SWANK.

(Absent, MOORE, JUDGE.)

Decided June 30, 1880.

1880
June Term.

The State
v.
Conkle *alias*
Swank.

1. In a prosecution for felony a plea of not guilty by an attorney is a nullity; such plea must be pleaded by the defendant in person; and the record should show that fact.

2. A person indicted for felony must be personally present during the trial; and such presence must be shown by the record.

3. Where a judgment against the defendant on a verdict of guilty on an indictment for felony is reversed by the Appellate Court, because the verdict was rendered upon a plea of not guilty pleaded by the defendant by his attorney and not in person, the prisoner is not entitled to a discharge under the constitutional provision, that no person shall be twice put in jeopardy for the same offence.

4. Where a judgment against the defendant on a verdict of guilty on an indictment for felony is reversed, and the verdict set aside because the plea of not guilty pleaded was pleaded by the defendant by attorney and not by the defendant in person, the cause will be remanded to the court below to be further proceeded with to final determination according to law upon the said indictment, as if no plea of not guilty had been pleaded.

5. Upon a trial on an indictment for felony the defendant may on cross examination of a witness for the state ask such witness, if he has employed counsel to aid in the prosecution against the defendant, and if such question is answered in the affirmative by the witness, it may be considered by the jury as tending to show feelings of bias in the witness against the prisoner in giving his testimony, and may be considered by the jury in connection with the credit to be given to the evidence of such witness.

The circuit court of Wood county on the 23d day of March, 1880, rendered a judgment against William Conkle *alias* William Swank, on an indictment for felony. To this judgment a writ of error and *supersedeas* were allowed upon the petition of said defendant.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the judgment complained of.

HAYMOND, JUDGE, furnishes the following statement of the case :

At a special term of the circuit court of the county of Wood, held on the 20th day of January, 1880, the grand jury, empanelled and sworn in and for the body of said county, found and presented an indictment against William Conkle *alias* William Swank, for an attempt to commit felonious murder in the said county of Wood. The indictment contains three counts. The first count charges an attempt upon the part of the defendant feloniously, wilfully and of his malice aforethought to kill and murder one A. R. Ralston on the —— day of November, 1879, in the night time, at the said county of Wood in the manner and form and by the means in the said count mentioned and described. The second count charges the defendant with an attempt feloniously, wilfully and of his malice aforethought to kill and murder A. R. Ralston in the manner and form and by the means in that count mentioned and described, on the —— day of November, 1879, in the night time, at the said county of Wood. And the third count charges that the defendant on the —— day of November, 1879, in the night time, at the said county of Wood, did attempt in manner and form and by the means in that count mentioned and described, feloniously, wilfully and of his malice aforethought to kill and murder A. R. Ralston, J. H. Swank, Alvinda Swank and A. R. Ralston, Jr.

It further appears, that afterwards on the 23d day of January, 1880, the said court made the following entry

93

and order in the case, to wit: "William Conkle *alias* Swank, who stands indicted for felony, was this day led to the bar in custody of the jailer of this county. Thereupon the said prisoner, by his attorney, moved the court to quash the indictment, which motion being considered by the court is overruled; and thereupon the prisoner, by his attorney, for plea, says he is not guilty in manner and form, as in the indictment against him is alleged, and of this he puts himself upon the country, and the prosecuting attorney likewise, and issue thereon is joined, and for reasons appearing to the court this cause is continued until Thursday the 29th inst. Thereupon the prisoner is remanded to jail."

Afterwards, on the 29th day of January, 1880, the said court made and entered the following order, to wit: "William Conkle *alias* Swank, who stands indicted for felony was this day led to the bar in custody of the jailer of this county. Thereupon on motion of the defendant by his attorney this cause is continued until the 1st day of the next term." * * * * "Thereupon the prisoner is remanded to jail."

It further appears that afterwards at a circuit court held for said county on the 1st day of March, 1880, the said court made and entered the following order, to wit: " This day came as well the prosecuting attorney as the defendant by his attorney; and thereupon came a jury, to wit: Simon Fairburn, William Lowres, E. L. Gale, Jr., James D. Looney, Hamilton Yates, James T. Dunbar, S. L. Grimes, Albert Petty, J. J. Harper, George A. Drennan, Charles W. Stone and Taylor Way, good and lawful men, who being elected and drawn by ballot, as the law requires, were sworn to well and truly try, and true deliverance make between the State of West Virginia and William Conkle *alias* Swank, and a true verdict render according to the evidence, and having heard the evidence in part, and there not being time to hear the whole evidence, are adjourned until to-morrow morning at nine o'clock, and the usual oath administered

to A. B. Beckwith and W. T. Cook, deputies for C. H. Shattuck, sheriff of Wood county, in relation to keeping the jurors together. Thereupon the prisoner is remanded to jail."

On March 2, 1880, the said circuit court made and entered in the said case the following order, to wit: "William Conkle *alias* Swank, who stands indicted for felony, was this day again led to the bar in custody of the jailer of this county, and the jury impanelled and sworn in the cause on yesterday appeared in charge of the sheriff pursuant to adjournment, and having heard the conclusion of the evidence and the argument of counsel in part, and there not being time to hear the whole argument, are adjourned until to-morrow morning at nine o'clock, and the usual oath administered S. S. Hazen, W. T. Cook and A. B. Beckwith, deputies for C. H. Shattuck, sheriff of Wood county, in relation to keeping jurors together. Thereupon the prisoner is remanded to jail."

It further appears that on the 3d day of March, 1880, said circuit court made and entered an order in said case in these words, to wit: "William Conkle *alias* William Swank was this day again led to the bar in custody of the jailer of this county, and the jury impanelled and sworn in this cause on a former day of this term, appeared in charge of the sheriff pursuant to their adjournment, and having heard the conclusion of the argument of counsel were sent out to consider of their verdict, and after some time returned into court, and upon their oath do say : 'We the jury find the prisoner William Conkle *alias* William Swank guilty in manner and form as charged in the within indictment, and we ascertain the term of his confinement in the penitentiary of this State at four (4) years; and thereupon the said prisoner by his attorney moved the court to suspend judgment at this time, and judgment is accordingly so suspended. Thereupon the prisoner is remanded to jail."

It also appears that at the said circuit court, continued and held for said county on the 23d day of March, 1880,

the said court made and entered the following order, to wit: " William Conkle *alias* William Swank, who stands convicted of felony, was this day again led to the bar in custody of the jailer of this county, and thereupon, it being demanded of the said prisoner if any thing he knew or had to say, why the court should not now proceed to pronounce judgment upon him according to law, and nothing being offered or alleged in delay of judgment, it is ordered by the court, that the said William Conkle *alias* William Swank, be imprisoned in the penitentiary of this State for the term of four years, the time by the jury in their verdict ascertained; and it is further ordered by the court, that the sheriff of this county do, as soon as may be, remove and safely convey the said William Conkle *alias* Swank from the jail of this county to the penitentiary of this State, there to be incarcerated for the period aforesaid, and in all things dealt with according to law. *Memo.* Be it remembered that on the trial of this cause the prisoner by his counsel tendered three bills of exceptions, marked one, two and three, to the ruling of the court during the progress of the trial, which several bills of exceptions were signed and sealed by the court and ordered to be made a part of the record in this cause. And thereupon the prisoner by his counsel stated in open court, that he desired time to make application to the Supreme Court of Appeals of this State for a writ of error to the judgment of this court pronounced in this cause, therefore it is ordered, that execution upon said judgment and sentence be suspended for sixty days. Thereupon the prisoner is remanded to jail."

Bill of exceptions marked one purports to contain all the material evidence given to the jury at the trial, which is quite voluminous. By this bill of exceptions it also appears, that after the jury had found and returned their said verdict to the court against the prisoner, and thereupon "the defendant by his counsel moved the court to set aside the verdict rendered by the jury in

this cause and award a new trial, on the ground that the same is contrary to the evidence, which motion being argued by counsel for the defendant and by the prosecuting attorney the court" overruled the defendant's said motion, and refused to set aside the said verdict and grant a new trial.

By said bill of exceptions number two, it appears that on the trial of the cause, after the jury were sworn and impanelled, " the State to maintain the issue joined upon its part, produced as a witness one A. R. Ralston, who being duly sworn gave evidence tending to show that on the morning succeeding Thanksgiving day, to wit, on the morning of the 29th of November, 1879, about four o'clock in said morning, his house was fired into, and the upper room of his house was penetrated by an iron slug something like a king-bolt, about four inches long and about one inch and one half in diameter, which entered on the south side of his house just above the base-board of said up-stairs room and immediately above the spot where witness was sleeping, some seven or eight feet above the bed, and passed into the base-board around the chimney, and was found upon the floor of said upper room ; that said Ralston's house was at that time occupied by himself, by Mrs. Conkle, the wife of the prisoner, and by John Conkle, alias Swank, and by a little son of witness Ralston ; that said John Conkle, alias Swank, a son of the prisoner, occupied a room up-stairs in said house, but not the room so penetrated by said slug ; that said testimony is more fully set forth in bill of exceptions number one, saved herewith unto prisoner, to which reference is made ; that upon cross-examination of said witness the prisoner by counsel, to maintain the issue upon his part, proved by said witness Ralston facts tending to show that said Mrs. Conkle, the wife of the prisoner, had been living with said witness for some years as his housekeeper, which circumstance gave rise to feelings of hatred and animosity between said witness and said prisoner ; and

further to maintain the issue on his part propounded to said witness, Ralston, the following question : "Mr. Ralston, I am now going to ask you a question which you may answer or not, as you choose. Did you ever bed with Mrs. Conkle?" to which witness answered "It is none of your business." After said question was propounded, and before the same was answered, objection was raised to said question by the State's attorney, which objection being argued was submitted to the court, and the court sustained said objection and ruled out the question and the answer on this ground, that if the witness answered the question in the affirmative, it was no defense to this indictment."

By bill of exceptions number three it appears, that after the jury were sworn, and the witness had given in evidence the testimony in chief as also upon cross-examination as is set out and detailed in exception number two filed in this cause, which evidence is referred to and made a part of this exception, the prisoner, further to maintain the issue on his part, by his counsel propounded to said witness, Ralston, the following question : ' Have you employed counsel to aid in the prosecution of this cause ?'. To which question the State by the prosecuting attorney objected, which objection being argued by counsel and considered by the court was sustained, and said question ruled out."

To the said judgment of the said circuit court the plaintiff in error heretofore upon his petition and assignment of errors therein, obtained from this court a writ of error, and the cause having during the present term of this court been argued and submitted by the counsel for the prisoner and the Attorney General to this court for review and determination upon the said writ of error and the record of the cause as the same is before us, it only remains now for us to ascertain and determine whether there is error in said judgment, for which it should be reversed, and to enter such judgment and order in the case as is proper.

*Loomis & Tavenner*, for plaintiff in error.

The Attorney General, *Robert White*, for the State :

Upon examination of the record in this case I find an error, not noticed by the counsel for the prisoner, yet such a manifest error as that I cannot see how the court in a *felony* case, when it comes to look at and decide all the points fairly arising upon the record, can fail to reverse the case. I do not deem it to be a part of my duty to press a case when I feel that there is manifest error. I therefore will not argue the other questions involved, if any can be said to be involved, in the case ; for if there *has been* in law *no trial* of the case in the court below, then it follows, that the questions raised by the counsel for the prisoner amount to naught. The error is this: The record shows, page eight, that the prisoner never pleaded at all *in person* to the indictment, nor was any issue to be tried by a jury ever made up. The record shows, that " thereupon the prisoner *by his attorney* for plea says he is not guilty in the manner and form as in the indictment against him is alleged, and of this he puts himself upon the country and the prosecuting attorney likewise."

See 9 Leigh 623 ; 1 Ch. Cr. Law 414; 1 Wend. 91 ; 3 Rob. (old) Pr. 267 ; 13 Gratt. 763 ; 14 Gratt. 713.

HAYMOND, JUDGE, delivered the opinion of the Court:

The errors specially assigned by the plaintiff in error in his said petition are as follows : "1st. It was error in the court to overrule the motion of your petitioner to set aside the verdict returned by the jury and award him a new trial, on the ground that the same is contrary to the evidence, and also on the ground that said verdict is not sustained by the evidence. 2d. The court erred in its several rulings as set forth in bills of exceptions numbers two and three. And the plaintiff in error in his said petition prays, that for these and other errors manifest

on the face of the proceedings a writ of error be awarded him to the said judgment," &c.

At the hearing of this case before us the Attorney General appeared personally and also filed a brief in the cause. The Attorney General orally and in his brief called the attention of this Court to the fact, that it appears by the record that the plea of not guilty pleaded to the indictment was not pleaded by the defendant to the indictment in person, but by his attorney, and that under the law this is manifest error, and that he does not deem it to be a part of his duty to press a case, when he feels that there is manifest error in the judgment, especially as this error fairly arises upon the record and must be considered by the court. I concur with the Attorney General in his view that where there is manifest material error in the judgment of the court below, fairly arising upon the record, and he is satisfied of that fact upon legal authority, his duty as the representative of the State before this Court does not require, that he shall endeavor falsely and against his conscience and judgment of the law to seek to procure this Court to affirm such judgment in which there is such manifest material error; and especially is this so in cases of felony. The Attorney General, as the foundation or grounds of his opinion and conviction of the law touching said error, has with commendable fairness as well as justification of his course in the premises cited the court to 9 Leigh 623; 1 Chitty Criminal Law 414; 1 Wend. (N. Y.) 91; 3 Robinson's (old) Practice 267; 13 Gratt. 763; 14 Gratt. 713, and submitted the case thereon to the determination of this Court.

Notwithstanding the views of the Attorney General, above stated, it is proper for this court to consult the authorities bearing upon the subject and consider and determine for itself, as to whether the fact, that the plea of not guilty was not pleaded by the defendant in person but by attorney, is an error, for which the judgment of the court below should be reversed under the law by this Court.

In the case of *Sperry* v. *Commonwealth,* 9 Leigh 623, it was held by the General Court of Virginia at the December term, 1838, that "In a prosecution for felony the accused must be arraigned and must plead *in person,* and in all the subsequent proceedings he must appear *in person,* not by attorney; and such appearance in person must be shown by the record." This case, as appears by the statement of the reporter, was a writ of error to a judgment of the circuit superior court of law and chancery for *Cabell* county, rendered against the plaintiff in error at April term, 1838, upon an indictment for stealing an iron gray mare of the value of $60.00, the property of Lewis Bench. The accused being found guilty by the jury was sentenced to imprisonment for five years in the penitentiary. The indictment was found at September term, 1837; and at that term the prisoner was led to the bar in custody, was arraigned, and pleaded not guilty. Whereupon, on his motion, the cause was continued till the next term. The record then states, that at a circuit court continued and held for *Cabell* county on Friday, the 27th of April, 1838, "came as well the attorney for the Commonwealth, as the prisoner *by his attorney,* and thereupon came a jury," &c., who having heard the testimony and arguments of counsel retired to consider of their verdict, and not agreeing on that day were adjourned until the next, when they again appeared in court and rendered their verdict; "whereupon the prisoner was remanded to jail." When brought into court on a subsequent day of the term, to receive his sentence the prisoner moved the court to grant him a new trial, on the ground that the verdict was contrary to evidence; which motion being overruled, he excepted, and set out in his bill of exceptions all the material facts and circumstances proved on the trial. In his petition to the General Court the prisoner assigned for error the refusal of the circuit court to grant a new trial, insisting that the whole evidence only showed him to have been guilty of a fraud. For this "and other errors apparent on the

94

1880<br>June Term.<br><br>The State<br>v.<br>Conkle *alias*<br>Swank.<br><br><br>Syllabus 1.

face of the record" he prays a writ of error, which was awarded.

In this case Judge Lomax delivered the opinion and judgment of the court, to which it does not appear there was any dissenting opinion. In the said opinion Judge Lomax at pages 624, 625 and 626, says that " the well established practice in *England* and in this State is, that a prisoner accused of felony must be arraigned in person, and must plead in person; and in all the subsequent proceedings it is required that he shall appear in person. This practice is stated in 1 Chit. Crim. Law, 411, 414. It is there laid down, that the accused in capital felonies cannot be found guilty in his absence ; that it is necessary that he should personally attend; and that the fact of such attendance should appear on the record. The rules applicable in *England* to trials for capital felonies are believed, in the general, to be equally applicable in this State to all felonies punishable by confinement in the penitentiary. In looking into the English forms of entries it will be found that the appearance of the accused is carefully stated upon the record to have been in his proper person ; 4 Chitt. Cr. Law, 268. The principles on which this practice is founded are supposed to be too obvious to need explanation or illustration. In this record it is stated, that on the 29th of September, 1837, the accused was led to the bar in custody of the keeper of the jail, and thereupon was arraigned, and pleaded; and on his motion the cause was continued till the first day of the next term ; and thereupon he was remanded to jail. And afterwards, at a circuit court, &c., held on the 27th of April, 1838, came as well the attorney for the commonwealth, as the prisoner *by his attorney*, and thereupon came a jury, &c. The jury not agreeing upon their verdict on that day were adjourned over until the next day ; and afterwards, on Saturday, the 28th of April, 1838, the record proceeds to state that the *venire* empaneled upon the trial of this cause on yesterday again this day appeared in court, and retired to consider

of their verdict, and after sometime returned into court, and on their oath do say, " We of the jury find the prisoner, *Allen M. Sperry,* guilty of the felony charged, and do ascertain the period of his confinement in the public jail and penitentiary-house to be five years; and we further find that the mare stolen has been returned to the owner thereof, whereupon the prisoner was remanded to jail.

" If it can be inferred, from the circumstances that the prisoner was remanded to jail, that he was personally present during the proceedings on the 28th of April when the verdict of conviction was found, there is no such circumstance stated in the proceedings of the preceding day. The only statement in regard to the appearance of the prisoner on that day is, that he appeared by his attorney, without any circumstance stated, from which it can necessarily be inferred that he was personally present. An appearance by attorney cannot imply that the prisoner was personally present in court, and therefore the record is deficient in what the law regards as essential to be stated in such a case. For this error, therefore, the court is of opinion that the judgment must be reversed, and a *venire facias de novo* awarded."

In the case of *Hocker* v. *The Commonwealth,* 13 Gratt. 763, it was held according to the second paragraph of the syllabus, that "A verdict having been found against a prisoner, he moves the court to set it aside as contrary to evidence; which motion on another day is overruled. On the day when the motion is made, and also when it is overruled, the record states that the prisoner appeared by attorney; and there is nothing in the record to show that he was present. This is error." In this case Judge Sammuels in delivering the unanimous opinion of the court at page 766, says: "The record, made up as it now stands, shows that on the 24th of April, when a motion was made to set aside the verdict of the jury, and again on the 26th of April, when the motion was overruled and judgment rendered, the plaintiff appeared by attor-

1880
June Term.

The State
v.
Conkle *alias*
Swank.

Syllabus 2.

ney; and there is nothing to show that he was personally present in court on either day. This is probably the result of mere inadvertence in making up the record, yet this court must look only to the record as it is. That this is error is shown by *Sperry's Case,* 9 Leigh 623. It is the right of any one, when prosecuted on a capital or criminal charge, ' to be confronted with the accusers and witnesses; ' and it is within the scope of this right that he be present not only while the jury are hearing his case, but at any subsequent stage, when any thing may be done in the prosecution by which he is to be affected."

In the case of *Pifer* v. *The Commonwealth,* 14 Gratt. 710, at page seven hundred and thirteen, Judge Allen in delivering the unanimous opinion of the court says: "In misdemeanors the personal presence of the defendant is not necessary at the trial ; a verdict and judgment for the fine may be found and rendered in his absence ; and after the term he can neither move for a new trial nor in arrest of judgment. But until final judgment he may so move. In England in cases of misdemeanor the jury merely passed upon the fact of guilt ; the amount of the fine against him was fixed by judgment of the court."

In the case of the *Queen* v. *Templeman,* 1 Salk. 55, it was held, that defendants may submit to a fine, though absent, if they have a clerk in court that will undertake for the fine. But when a man is to receive any corporal punishment, judgment cannot be given in his absence ; and the reason given is, that there is a *capias pro fine,* but no process to take a man and put him on a pillory. *Duke's Case, Id.* 400, is to the same effect.

In *Rex* v. *Hann & Price,* 3 Burr 1786, the defendants had confessed themselves guilty of a misdemeanor, and on the undertaking of their clerk in court to answer for their fines, it was agreed by court and counsel, that such motion was subject to the discretion of the court either to grant or to refuse it, when it was clear and certain

that the punishment would not be corporal; yet it ought to be denied in every case where it was either probable or possible, that the punishment would be corporal.

In the case of *The People* v. *Perkins,* 1 Wend. 91, it was held substantially, that a prisoner tried for felony must be present on the taking of the verdict.

In the third volume Robinson's (old) Practice page one hundred and fifteen it is said : "The well established practice in *England* and in this State is, that a party indicted for felony must appear in person and plead in person," &c. Again at page one hundred and seventy-eight Mr. Robinson says: "It has been already stated, that a prisoner accused of felony must be arraigned in person and must plead in person. It is required, in like manner, that he shall appear in person in all the subsequent proceedings. And the fact of his having personally attended must appear by the record." And he refers to *Sperry's Case* in 9 Leigh. Again at page two hundred and sixty-seven Mr. Robinson says : "It is Syllabus 3. laid down in 1 Chitty's Criminal Law 414, that, although a defendant accused only of a misdemeanor may be found guilty in his absence, this can never be done in capital felonies, but it is necessary that he should personally attend, and that the fact should appear on the record. The rules applicable in *England* to trials for capital felonies are believed in the general to be equally applicable in *Virginia* to all felonies punishable by confinement in the penitentiary." And he again refers to Sperry's said case.

In the case of *Younger* v. *The State,* 2 W. Va. 579, it was held according to the syllabus : "First—A person indicted for a felony must be personally present during the trial therefor, and the record can alone be looked to for the evidence to prove such presence at every stage of the trial. Third—A prisoner indicted for felony should be present in court, and when arraigned, should plead in person, and the record should show that fact. Fifth— Where a judgment on a verdict of guilty on an indict-

ment for felony is reversed by this court, the prisoner is
not entitled to a discharge under the constiutional pro-
vision that no person shall be twice put in jeopardy for
the same offence."

Bishop on Criminal Law, § 268, vol. 1, says: "And
as a general proposition the defendant must present him-
self at the arraignment and plead personally to the in-
dictment; he cannot do it by attorney.    The exception
is, that for special cause shown, and as a favor to the de-
fendant, he will be permitted to plead by attorney in the
case of a misdemeanor punishable only by fine, and not
by imprisonment; and in such a case the court may per-
mit the trial to go on in his absence."    Again at section
two hundred and seventy-three the same author says:
"But subject to the exception thus stated in the Ohio
case, if indeed this Ohio doctrine is to be received else-
where, the rule is very broad, that in case of felony or
treason the prisoner must be present during the whole
trial, including the giving in of evidence and the rendi-
tion of the verdict, else no valid judgment can be pro-
nounced on the verdict."    See also cases cited in note
three to said section.    See also *The State* v. *Strauder*, 8
W. Va.686, 690, 691.

The thirty-eighth section of chapter one hundred and
sixty-nine, (page six hundred and nine) of the Code of
Virginia of 1819 provided that "whensoever, in treason
or felony, or other offence punishable by confinement in
the public jail and penitentiary-house, any person shall
stand mute on his arraignment, or persists, after being
admonished by the court, in not answering directly to
the indictment, or shall be out-lawed, he shall be consid-
ered as convicted, and the same judgment, execution and
disabilities shall take place and be awarded, as if he had
been convicted by verdict or confession of the crime."
The second section of chapter twenty-one of the acts of
the Legislature of Virginia of 1847-8, page one hundred
and forty-eight provides, that "No person indicted for a
felony shall be tried therefor, unless personally present

during the trial." And the fourth section of same chapter provides, that "if on the arraignment of any person who is indicted, he shall refuse to plead or answer, or shall not confess the indictment to be true, the court shall order the plea of not guilty to be entered; and thereupon the proceedings shall be the same as if he had pleaded not guilty to the indictment." The third section of chapter 208 of the Code of Virginia of 1860 provides, that "A person indicted for felony shall be personally present during the trial therefor. If, when arraigned, he will not plead or answer, and do not confess his guilt, the court shall have the plea of not guilty entered, and the trial shall proceed, as if the accused had put in that plea." The same provision is in the Code of Virginia of 1849.

The second section of chapter one hundred and fifty nine of the Code of this State of 1868, is as follows, to wit: "2. A person indicted for felony shall be personally present during the trial therefor. If he refuse to plead or answer, and do not confess his guilt, the court shall have the plea of not guilty entered and the trial shall proceed, as if the accused had put in that plea, and judgment upon the verdict in any such trial be entered up as in cases of misdemeanor. The formal arraignment of the prisoner, the proclamation by the sheriff, and the charge of the clerk to the jury, as heretofore practiced, shall hereafter be dispensed with." This section dispenses with the formal arraignment, &c., of the prisoner, as theretofore practiced, but does not dispense with the requirement, that the defendant shall appear and plead in person.

In the fifth edition of Wharton's American Criminal Law, volume one, page five hundred and thirty and section five hundred and thirty it is laid down as law, that " A plea by an attorney of a party for a felonious assault, committed with an intent to rob, is a nullity; the defendant must plead in person. It is otherwise, however in misdemeanors." And the case of *McQuillen* v. *State*

*of Mississippi*, 8 Smed. and M. (Miss.) Chy. 587, is cited. By reference to that case in the report I find that in the syllabus it is stated to have been held: "A plea by an attorney of a party indicted for an assault, committed with intent to rob, is a nullity; the defendant must plead in person." In this case Chief Justice Sharkey delivered the unanimous opinion of the court, and at page five hundred and ninety five, he says: "The second error assigned is, that it does not appear that the accused ever pleaded to the indictment. The law undoubtedly is that the defendant must plead in person. In this instance there was a plea by attorney, but that was a nullity."

The entry in the case at bar, as appears by the record is, that on the 23d day of January, 1880, "William Conkle, *alias* Swank, who stands indicted for felony, was this day led to the bar in custody of the jailer of this county, and thereupon the said prisoner by his attorney moved the court to quash the indictment, which motion being considered by the court is overruled, and thereupon the prisoner *by his attorney*, for plea says: he is not guilty in manner and form as in the indictment against him is alleged, and of this he puts himself upon the country," &c. According to the authorities I have cited and the law, as I understand it to be in this State, in cases of indictments for felony the defendant must plead in person, except where he refuses to plead or answer, and does not confess his guilt, in which case the court directs the plea of not guilty to be entered. The plea in the case at bar being by attorney was a nullity, and it must be considered by this court that the prisoner (the defendant) was tried by the jury without a plea of not guilty having been entered in the cause. For this reason the verdict of the jury cannot be permitted to stand; and the judgment of the said circuit court is erroneous and must be reversed.

It seems there are other pleas that a prisoner may make to an indictment for felony besides the plea of not guilty, such as plea in abatement thereof for certain

causes, but I apprehend all such pleas must be pleaded by the prisoner in person and not by attorney.

No objection has been made before us by the counsel for the prisoner to the sufficiency of the indictment in this cause, or to either count thereof. I have examined the indictment and considered it, and I am of opinion that the indictment and each count thereof are good and sufficient upon their face, and that there is no valid objection thereto, and that the court did not err in overruling the motion to quash. There may perhaps be some question as to whether the motion to quash the indictment should not have appeared upon the record to have been made by the prisoner in person instead of by his attorney; but as it sufficiently appears by the record that the prisoner was in court, when said motion was made by his attorney, and being of opinion that the indictment and each count thereof is good and sufficient in law as an indictment for the felony therein charged I deem it unnecessary now to decide that question. But I will here say, that it is best and safest generally, that such motions should appear by the record to have been made by the prisoner in person, and not by an attorney. In the case of *Younger, Jr.,* v. *The State,* 2 W. Va. 579, a motion to quash the indictment was made by the defendant by attorney, and no notice or criticism is taken or made by the Appellate Court in relation thereto. Perhaps the court may have considered such motion good. See the case. Where it appears that a motion was made by the "prisoner or defendant" in a case of felony without the words "by his attorney" or words of like import, it will be taken that the prisoner was personally present and made the motion in person. *State* v. *Strauder,* 8 W. Va. 686 and 690. But it is more technical and appropriate for the record to show that the "prisoner or the defendant in his proper person moved the court to quash, &c., or the prisoner in his proper person sayeth he is not guilty," &c.

It sufficiently appears that the prisoner was present in

person in court during the proceedings had in his cause on the 29th day of January 1880. As we have seen, the record of the proceedings of the court in the cause on the 1st day of March, 1880, recites that "this day came as well the prosecuting attorney as the defendant *by his attorney*, and thereupon came a jury to wit: Simon Fairbury and eleven others, naming them, who being selected and drawn by ballot as the law requires, were sworn to well and truly," &c., "and having heard the evidence in part and there not being time to hear the whole evidence are adjourned until to-morrow morning nine o'clock," &c., "thereupon the prisoner is remanded to jail." There is nothing in the last named order from which this Court can see or infer that the prisoner was present during the important part of his trial shown by said order, unless it be the concluding part thereof, to wit, "thereupon the prisoner is remanded to jail."

The record in *Sperry's Case* in 9 Leigh 620 shows, that on the 27th day of April, 1838, "came as well the attorney for the commonwealth as the prisoner by his attorney, and thereupon came a jury," &c., but according to the statement of Judge Lomax in his opinion, there was no such circumstance as that "thereupon the prisoner is remanded to jail," &c., or the like stated or shown in the order or proceedings of that day. In the language of Judge Lomax, "the only statement in regard to the appearance of the prisoner on that day is, that he appeared by his attorney, without any circumstance stated from which it can necessarily be inferred that he was personally present. And appearance by attorney cannot imply that the prisoner was personally present in court, and therefore the record is deficient in what the law regards as essential to be stated in such case." But in *Sperry's Case* the record of the proceedings of the court, as made and entered on the 28th day of April, 1838, states, that "the *venire* impanelled upon the trial of this cause on yesterday again appeared in court, and retired to consider of their verdict, and after some time returned

into court, and on their oath do say: "We the jury find the prisoner, Allen R. Sperry, guilty of the felony charged," &c., "whereupon the prisoner was remanded to jail." This last named statement of the proceedings of the court is in substance the same as the statement of the proceedings of the court in the case at bar in the said order of the 1st day of March, 1880, except the last named proceedings state in addition, that the defendant appeared *by attorney.* Judge Lomax upon this subject says: "If it can be inferred, from the circumstance that the prisoner was remanded to jail, that he was personally present during the proceedings on the 28th of April, when the verdict of conviction was found, there is no such circumstance stated in the proocedings of the preceding day." Judge Lomax does not expressly say that the proceedings in *Sperry's Case* on the 28th of April, 1838, as stated in the record, sufficiently show that the prisoner was present during the proceedings of the court in his case on that day. Nor do I feel authorized to conclude, from what the judge did say, that it can be clearly or satisfactorily inferred, that he was of opinion that the record did or did not sufficiently show that the prisoner was present during the said proceedings.

The record in the Sperry case, as well as the record in the case at bar, certainly states sufficient to necessarily authorize and require the inference that the prisoner was personally before the court on the day in question in each case. The prisoner could not have been remanded to jail, unless he was personally present before the court. On the day before the prisoner had been regularly remanded to jail, and it seems to me that it is fair to infer from the record, that he was brought into court from the jail on the 1st of March by an officer before he was remanded to jail on that day to be personally present before the court during the proceedings of the court in his cause on that day. No other inference, it seems to me, can be drawn from the record. But does the record sufficiently show, that he was personally present before the

1880
June Term.

The State
v.
Conkle *alias*
Swank.

court during the proceedings in this cause on said 1st of March ? I apprehend that the record scarcely ever states expressly in so many words that the prisoner "was personally present during all the proceedings had in this cause" on any day of the trial, or, that he was "personally present during the trial." But generally the record states facts and circumstances from which the Appellate Court may fairly and reasonably see or infer, that the prisoner was present during the proceedings had in the cause by the court on each day of the trial. It must be admitted that the proceedings of the court, as stated in the record in this cause, on the said 1st day of March are not as full and satisfactory as to the personal presence of the prisoner during the proceedings had in the cause in the court on the said 1st day of March, as is usual and customary in such cases. The question, as to whether the record of the proceedings of the court in this cause on said 1st day of March sufficiently shows the presence of the prisoner during such proceedings on that day, has not been argued before us either by the Attorney General or the counsel for the prisoner, and under the view, which I have already expressed upon another branch of this case, the question has in fact become immaterial, so far as this case can now be affected. It is hardly to be expected, that the same question will be presented by the record of the proceedings of the said circuit court, after the cause is remanded to it for further proceedings therein to be had, which must necessarily be done. The question is an important one, and should be well considered before being decided by this Court in a cause where it is material that it should be decided. But, as I regard it as immaterial in this cause, and as the question has not been argued before us in any form, I deem it proper and prudent to not now express any opinion thereon, but to leave the question for future consideration and determination in a case where it is material, if any such case should arise. The record of the proceedings had in the cause on the 2d day of March, 1880, seems to sufficiently

show that the prisoner was personally present during the same, and so of the record of the proceedings had on the 3d of March, 1880.

. *As to the matters arising upon the prisoner's second bill of exceptions.*

We have seen the contents of this bill of exceptions as I have hereinbefore given them. In the 13th ed. of Mr. Greenleaf's work on Evidence, vol. 1, § 450, p. 506, he says: "So also it has been held not irrellevant to the guilt or innocence of one charged with a crime, to enquire of the witness for the prosecution, in cross-examination, whether he has not expressed feelings of hostility towards the prisoner. The like enquiry may be made in a civil action, and if the witness denies the fact, he may be contradicted by other witnesses. So also in *assumpsit* upon a promissory note, the execution of which was disputed, it was held material to the issue, to enquire of the subscribing witness, she being a servant of the plaintiff, whether she was not his kept mistress." See also notes two and three to same section, and section four hundred and fifty-eight and notes one and two thereto.

The same author in section four hundred and fifty-one also says: "In regard to the *privilege of witnesses, in not being compelled to answer,* the cases are distinguishable into several classes. First. When it reasonably appears that the answer will have a tendnecy to expose the witness to a penal liability, or any kind of punishment, or a criminal charge. Here the authorities are exceedingly clear, that the witness is not bound to answer; and he may claim the protection at any stage of the enquiry, whether he has already answered the question in part, or not at all. If the fact, to which he is interrogated, furnishes but one link in the chain of testimony, which is to convict him, he is protected. And whether it may tend to criminate or expose the witness is a point upon which the court is bound to instruct him, and which the court will determine under all the circumstances of the case;

but without requiring the witness fully to explain how he might be criminated by the answer, which the truth would oblige him to give. For if he was obliged to show how the effect would be produced, the protection which the rule of law is designed to afford him would at once be annihilated. But the court will not prevent the witness from answering it, if he chooses; they will only advertise him of his right to decline it. But in all cases, where the witness chooses to answer, he is bound to answer everything relative to the transaction. But the privilege is his own, and not that of the party; counsel therefore will not be allowed to make the objection. If the witness declines answering, no inference of the truth of the fact is permitted to be drawn from that circumstance. And no answer forced from him by the presiding judge, after he has claimed the protection, can be afterwards given in evidence against him," &c. See also the notes to said section.

In section four hundred and fifty-four the same author says: "Where the answer, though it will not expose the witness to any criminal prosecution or penalty, or to any forfeiture of estate, yet has a *direct tendency to degrade his character*. On this point there has been a great diversity of opinion, and the law still remains not perfectly settled by authorities. But the conflict of opinion may be somewhat reconciled by a distinction, which has been very properly taken, between cases where the testimony is relevant and material to the issue and cases where the question is not strictly relevant, and is asked only under the latitude allowed in cross-examination. In the former case there seems great absurdity in excluding the testimony of a witness, merely because it will tend to degrade himself, where others have a direct interest in that testimony, and it is material to the establishment of their rights of property, of liberty, or even of life, or to the cause of public justice. Upon such a rule, one who had been convicted and punished for an offence, when called as a witness against an accomplice,

1880
June Term.

The State
v.
Conkle *alias*
Swank.

would be excused from testifying to any of the transactions in which he had participated with the accused, and thus the guilty might escape. And accordingly the better opinion seems to be, that when the transaction, to which the witness is interrogated, forms any part of the issue to be tried, the witness will be obliged to give evidence, however strongly it may reflect on his character." See note one to said section.

The same author in section four hundred and fifty-five says: " But where the question is not material to the issue, but is *collateral and irrelevant,* being asked under the license allowed in cross-examination, it stands on another ground. In general, as we have already seen, the rule is, that upon cross-examination, to try the credit of a witness, only general questions can be put; and he cannot be asked as to any collateral and independent fact merely with a view to contradict him afterwards by calling another witness. The danger of such a practice, it is said, is obvious, besides the inconvenience of trying as many collateral issues as one of the parties might choose to introduce, and which the other could not be prepared to meet. Whenever therefore the question put to the witness is plainly of this character, it is easy to perceive that it falls under this rule and should be excluded. But the difficulty lies in determining with precision, the materiality and relevancy of the question, when it goes to the character of the witness. There is certainly great force in the argument, that where a man's liberty, or his life, depends upon the testimony of another, it is of infinite importance, that those who are to decide upon that testimony should know, to the greatest extent, how far the witness is to be trusted. They cannot look into his breast to see what passes there; but must form their opinion on the collateral indications of his good faith and sincerity. Whatever, therefore, may materially assist them in this enquiry is most essential to the investigation of truth ; and it cannot but be material for the jury to understand the character of the witness, whom

they are called upon to believe, and to know whether, although he has not been convicted of any crime, he has not in some measure rendered himself less credible by his disgraceful conduct. The weight of this argument seems to have been felt by the judge in several cases in which questions tending to disgrace the witness have been permitted in cross-examination." See note one to this section.

The same author in section 456 says: " It is however generally conceded, that when the answer, which the witness may give, will not directly and certainly show his infamy, but will only tend to disgrace him, he may be compelled to answer. Such is the rule in equity, as held by Lord Eldon; and its principle applies with equal force at common law; and accordingly it has been recognized in the common law courts. In questions involving a criminal offence the rule, as we have seen, is different; the witness being permitted to judge for the most part for himself and to refuse to answer, whenever it would tend to subject him to a criminal punishment or forfeiture. * * * Nor does there seem to be any good reason, why a witness should be privileged from answering a question touching his present situation, employment and associates, if they are of his own choice; as, for example, in what house or family he resides, what is his ordinary occupation, and whether he is intimately acquainted and conversant with certain persons, and the like; for however they may disgrace him, his position is one of his own selection."

In section four hundred and fifty-eight the same author says: "There is another class of questions, which do not seem to come within the reasons already stated in favor of permitting this extent of cross-examination; namely, questions, the answers to which, though they may disgrace the witness in other respects, yet *will not affect* the credit due to his testimony. For it is to be remembered, that the object of indulging parties in this latitude of enquiry is, that the jury may understand the

character of the witness, whom they are asked to believe, in order that his evidence may not pass for more than it is worth. Enquiries, therefore, having no tendency to this end are clearly impertinent. Such are the questions frequently attempted to be put to the principal female witness in trials for seduction *per quod servitium amisit* and on indictments for rape, &c., whether she had not previously been criminal with other men, or with some particular person, which are generally suppressed. So, on an indictment of a female prisoner for stealing from a person in a house, the prosecutor cannot be asked, whether at that house anything improper passed between him and the prisoner." In note one to this section *Dodd* v. *Norris*, 3 Camp. 519; *Rex* v. *Hodgdon*, Russ. & Ry. 211; *Vaughn* v. *Perrine*, Penningt. 534 are cited; but it is there stated, that more recent cases have allowed such questions to be asked, but hold the interrogator bound by the answer. *Reg.* v. *Holmes*, 1 L. R. C. C. 334, affirming *Rex* v. *Hodgdon* and overruling *Rex* v. *Reglin*, 2 M. & Rob. 512; *Garlet* v. *Simpson*, 32 L. J. M. C. 186; *Godard* v. *Parr*, 24 L. J. Ch. 784. But that where the prosecution is under a bastardy act, the issue being upon the paternity of the child this enquiry to its mother, if restricted to the proper time, is material and she will be held to answer." In note two to said section *Rex* v *Pitcher* is cited, 1 C. & P. 85, but in the note it is stated, that "this case, *Macbride* v. *Macbride*, *supra*, is said not to be law now in England by Taylor's Ev. §1293, n. And see also ante §§450·n. 455 n.

In section four hundred and fifty-nine the same author says, "but where the question *does not fall within either of the classes mentioned* in the three preceding sections, *and goes clearly to the credit of the witness* for veracity, it is not easy to perceive why he should be privileged from answering, notwithstanding it may disgrace him. The examination being governed and kept within bounds by the discretion of the judge, all enquiries into transactions of remote date will of course be suppressed; for the in-

96

terests of justice do not require that the errors of any man's life, long since repented of and forgiven by the community, should be recalled to remembrance, and their memory be perpetuated in judicial documents, at the pleasure of any future litigant.    The State has a deep interest in the inducements to reformation held out by the protecting veil which is thus cast over the past offenses of the penitent.    But when the enquiry relates to transactions comparatively recent, bearing directly upon the present character and moral principles of the witness, and therefore essential to the due estimation of his testimony by the jury, learned judges have of late been disposed to allow it."    Thus it has been held, that a witness called by one party, may be asked in cross-examination, whether he had not attempted to dissuade a witness for the other party, from attending the trial.    *    *    *    *    The great question however, whether a witness may not be bound in some cases to answer an interrogatory to his moral degradation, when, though it is collateral to the main issue, it is relevant to his character for veracity, has not yet been brought into direct and solemn judgment, and must therefore be regarded as an open question, notwithstanding the practice of eminent judges at *Nisi Prius* in favor of the enquiry, under the limitations we have above stated.    In note three to this section it is said :   "This relaxation of the old rule was recognized some years ago by Lord Eldon.    'It used to be said, he observed, that a witness could not be called on to discredit himself; but there seems to be something like a departure from that ; I mean in modern times the courts have permitted questions to show, from transactions not in issue, that the witness is of impeached character and therefore not so credible, *Parkhurst* v. *Lowten*, 2 Sevant 216.'"    See notes to four last named sections.

In section four hundred and sixty, the same author says:   "Though there may be cases, in which a witness is not bound to answer a question which goes directly to disgrace him, *yet the question may be asked,* whenever the

1880
June Term.

The State
v.
Conkle *alias*
Swank.

answer, if the witness should waive his privilege, would be received as evidence, &c.

In making the citations from Mr. Greenleaf which I have I do not affirm all the propositions and assertions made by him therein as being law ; but many of them evidently are ; and all of them are entitled to respectful consideration in the consideration and determination thereof. I have quoted from Mr. Greenleaf largely to show herein the views of a highly respected American author upon evidence.

Bill of exceptions number one referred to in said bill of exceptions number two shows among other things, that the witness, A. R. Ralston, who is one of the persons mentioned in the indictment, was the owner of the house in the indictment mentioned ; that the said Ralston, who was introduced and examined as a witness by the State, in speaking of the house fired into and the night it was fired into on cross-examination stated among other things, that on that night he slept in the room below the one penetrated by the ball ; that there was no person sleeping in the room disturbed that night ; that the house has four rooms ; that Mrs. Conkle and his little son were in the east end of the house on the ground floor, on the same floor that he (witness) occupied ; and John Swank was upstairs ; that there was a door between his (witness's) room and that room ; that John Swank occupied the room on the upper floor on the south side of the house. From this I understand, that on the night the said house was fired into the witness (Ralston) slept in one of the two rooms on the lower floor of the house, and Mrs. Conkle, the wife of the prisoner, and his little son slept in the other room on the said lower floor, and that there was a door between the said room, in which the witness slept, and that in which said Mrs. Conkle and his little son slept. The evidence of A. R. Ralston at the trial, as certified in said bill of exceptions number one, also among other things on cross-examination by the prisoner, tends to prove that said Mrs.

Conkle had been living at the said Ralston's house, as his house-keeper for several years separate and apart from her husband; that the prisoner is the same man who was prosecuted by said Ralston several years before the trial, in 1872, 1873 or 1874, for burning the barn of said Ralston ; that the prisoner's wife has been living at said Ralston's house ever since said prosecution. These matters, which I mention as appearing by said bill of exceptions number one, are in addition in part to matters of evidence stated in said bill of exceptions number two, and a part thereof are the same as a part of those stated in said bill number two. But I do not pretend to state all the facts, which the evidence of said Ralston in chief, or on cross-examination, tends to prove. I deem it unnecessary to state in this opinion all the facts, which the evidence of said Ralston tended to prove either in his evidence in chief for the State or on his cross-examination, or what the evidence of other witnesses for the State in chief or on cross-examtion tended to prove. But I deem it sufficient to state here, that some of the evidence for the State tended to prove that the prisoner at the time and place in the different counts in the indictment mentioned, and about four o'clock in the night time, with some kind of a gun made by himself, fired an iron shot of a peculiar description into the upper story of said A. R. Ralston's dwelling-house; that said iron shot struck the house and passed through one side of it into the upper room of said house immediately over the room in which said Ralston was then and there sleeping; that said room into which said iron shot so passed was not then occupied by any person and seldom was. I refer to the evidence as certified in said bill of exceptions number one, where it may be seen fully.

Upon consideration of the authorities I have cited it seems to me, that under the circumstances now appearing and the form in which said question was put, which the court rejected and ruled out, as shown by said bill of exceptions number two, the court did not err in rejecting and ruling out the said questions.

1880
June Term.

The State
v.
Conkle *alias*
Swank.

*As to the matter of error arising on the said third bill of exceptions:* As we have seen, the prisoner on cross-examination propounded to the witness Ralston this question, viz: " Have you employed counsel to aid in the prosecution of this cause ?" and the prosecuting attorney objected, and the court sustained the objection and ruled out the question. It seems to me on authority hereinbefore stated and upon principle, that the court erred in rejecting and ruling out this question, because the answer thereto affirmatively might tend to show feelings of bias against the prisoner upon the part of the witness. While the effect of an affirmative answer to such a question may ordinarily be in and of itself very small with a jury in considering the credit of the witness, still I apprehend it is proper to go to the jury to be considered by them in connection with the other evidence of such witness, upon the question of the amount and extent of the credit to which such a witness is entitled.

Syllabus 5.

As this cause must be remanded to said circuit court for further proceedings, I deem it improper for this court to express any opinion now as to whether the verdict of the jury was authorized by the evidence before them. No opinion is therefore expressed upon the said first assignment of error.

The reversing of the judgment rendered in the court below and the setting aside of the verdict of the jury by this court in this case does not entitle the prisoner to a discharge under the Constitutional provision, that no person shall be twice put in jeopardy for the same offence. But this cause must, when remanded by this court to the circuit court of said county of Wood, be further proceed with and determined according to law upon the said indictment therein against the prisoner, as if no plea of not guilty had ever been pleaded therein.

Syllabus 4.

This court will not now by express words order a new trial by jury to be had, because under the view taken by this court the cause was erroneously and imperfectly tried by a jury, before it was properly and legally ready for a trial by jury and cannot be tried by a jury legally,

until it is remanded to the said circuit court, and it is first properly matured in that court by a proper plea properly pleaded and issue for such trial, and the oause cannot be tried by jury in the court below, until it is so matured for that purpose, and when so matured then the said circuit court should proceed to cause the trial of the prisoner by jury to be had before it according to law.

For the foregoing reasons there is error in the said judgment of the circuit court of the said county of Wood, rendered in this cause on the 23d day of March, 1880, against the said William Conkle *alias* William Swank, and the same must therefore be reversed, set aside and annulled. And this court proceeding to render such judgment as the said circuit court should have rendered, it is considered by this court that the verdict of the jury rendered in this cause on the 3d day of March, 1880, be and the same is hereby set aside, and that the plea of not guilty pleaded in this cause to said indictment by the prisoner by his attorney on the 23d day of January, 1880, is a nullity and must be held for naught. And this cause is remanded to the said circuit court of the said county of Wood, with instructions to said court to cause the said William Conkle, *alias* William Swank, to be brought before it, to answer said indictment against him, and to be further dealt with and the cause to be proceeded with upon said indictment according to law, as if no plea of not guilty had ever been pleaded therein, and no trial before a jury had ever been had, or a verdict of a jury rendered therein, or judgment rendered therein by said court against the said William Conkle, *alias* William Swank, upon the verdict of a jury ; and that the said circuit court further proceed in this cause according to the principles settled in the foregoing opinion, and further according to law.

JUDGES GREEN AND JOHNSON CONCURRED.

JUDGMENT REVERSED. CAUSE REMANDED.