# CHARLESTON

## STATE *v.* STEVENSON.

Submitted September 3, 1908.      Decided October 6, 1908.

1. JUDGES—*Special Judge—Effect of Appearance of Regular Judge.*
   It is reversible error for a regular judge, pending the trial of a cause begun and continued before a special judge duly elected to preside in the absence of such regular judge, on making his appearance at the same term, to assume jurisdiction thereof, proceed with the trial, and pronounce judgment therein. (p 395.)

2. CRIMINAL LAW—*Presence of Defendant—Reception of Evidence—Circumstances of Offense.*
   It is error to the prejudice of the prisoner's legal rights for the court, after receiving a prisoner's plea of guilty of murder in the first degree, and, before pronouncing judgment thereon, to proceed in the absence of the prisoner to examine witnesses and hear from the special judge who presided at the time of receiving such plea statements respecting the circumstances and facts of the kill-

ing, whether such examination be for the personal satisfaction of the judge pronouncing the judgment of the court or to advise him as to the character of judgment that should be pronounced on said plea. (p. 397.)

3, Same—*Plea of Guilty—Withdrawal—Discretion of Court.*

It is a matter addressed to the sound discretion of the trial Court, reviewable here for any abuse thereof, whether it will permit a defendant to withdraw his plea of "guilty of murder in the first degree" entered after having withdrawn his former plea of "not guilty" and to plead anew his plea of "not guilty," and have a trial thereon before a jury. (p. 399.)

Error to Circuit Court, Mercer County.

Frank Stevenson was indicted for murder in the first degree. He entered a plea of not guilty, which was thereafter withdrawn on his motion and a plea of guilty entered. Subsequently, and before any judgment was pronounced by the special judge who had received the plea, the regular judge appeared and assumed the bench, and proceeded in defendant's absence to hear statements of the special judge as to what the witnesses had testified at the time of entering the plea of guilty, and also to hear the sworn statements of a part of the witnesses summoned. Following this, the court, the regular judge presiding, adjudged defendant guilty of murder in the first degree and sentenced him to be hung, and defendant brings error.

*Reversed and Remanded.*

Hugh G. Woods, for plaintiff in error.

Wm. G. Conley, Attorney-General, and A. M. Sutton, for the State.

Miller, Judge:

The indictment in the criminal court, returned January 8, 1907, for murder and manslaughter, was in the form prescribed by section 4200, Code 1906, and charged that the defendant, on September 21, 1906, "in the said county of Mercer, feloniously, wilfully, maliciously, deliberately and unlawfully did slay, kill and murder one Mose Blagman, against the peace and dignity of the State." January 12, 1907, the prisoner demurred to the indictment, which being overruled, in his own proper person he entered his plea of not guilty and issue was joined thereon. January 26, 1907,

the case was continued generally to April 8, 1907. The record does not show that anything further was done in the case until July 9, 1907, when the regular judge having failed to attend, the attorneys present and practicing in said court, by ballot, elected John M. McGrath judge to preside in the absence of the regular judge, who, after taking the oath prescribed by law to perform faithfully and impartially the duties of said judge of said court so long as he shall continue to act as such, assumed the bench and proceeded with the business. Whereupon the defendant moved the court to permit him to withdraw his plea of not guilty, which was granted; and the plea being withdrawn, in his own proper person the defendant entered a plea of "guilty of murder in the first degree in manner and form as the State in her said indictment against him hath alleged," and the court took time to consider of its judgment thereon. Subsequently, July 18, 1907, and before any judgment on the defendant's plea of guilty was pronounced by the special judge who had received the plea and taken time to consider of his judgment, Judge Maynard, the regular judge, appeared and assumed the bench, and, as he recites in a bill of exceptions, proceeded in the absence of the prisoner and his counsel, and not in open court, to hear statements of special judge McGrath as to what the witnesses had testified at the time of entering the plea of guilty, and also to hear the sworn statements of a part of the witnesses summoned in the case, stating at the same time, however, as further certified in said bill of exceptions, that he had heard the statement of the special judge and of the witnesses examined solely for his personal satisfaction, the judgment pronounced being based solely on the prisoner's plea of guilty, uninfluenced by any statements of the special judge or witnesses examined. Following this proceeding, the court, August 1, 1907, the regular judge presiding, the prisoner having nothing to say in opposition thereto, adjudged him guilty of murder in the first degree and that he be taken from the jail of the county to the penitentiary of the State and there confined until October 25, 1907, when he should be hanged by the neck until he be dead.

Immediately after judgment was thus pronounced against him, as shown in said bill of exceptions, the prisoner moved

the court to set aside "its sentence and judgment and to permit him to withdraw his plea of guilty and enter a plea of not guilty and have his case tried by a jury," which motions being resisted by the attorney of the State, were overruled, and the action of the court thereon was excepted to by the prisoner.

On September 7, 1907, the prisoner presented his petition to the circuit court for a writ of error, but that court, being of the opinion that there was no error, the writ was refused. Whereupon, on presentation of his petition to this Court, October 17, 1907, the writ was allowed.

Three questions are here presented for our consideration: First, was it competent for Judge Maynard, the regular judge, to assume the bench and displace special judge McGrath while considering of his judgment on the prisoner's plea of guilty, and proceed to pronounce judgment of conviction and sentence? Second, if competent and having jurisdiction to pronounce judgment, was it error to the prejudice of the prisoner's legal rights for Judge Maynard, in the absence of the prisoner and his counsel, to hear the statement of the special judge and examine witnesses for his personal satisfaction, preliminary to pronouncing judgment of conviction and sentence? And third, did the court err in overruling the prisoner's motion for leave to withdraw his plea of guilty and plead anew his plea of not guilty and have his case tried by a jury?

With respect to the first question, the record shows that special judge McGrath, in the absence of the regular judge, and pursuant to section 3631, Code 1906, was elected to hold the court generally in the absence of the regular judge, and not specially to preside in this particular case. Undoubtedly, therefore, the appearance of Judge Maynard, the regular judge, operated to vacate the office of special judge, without any order to that effect, as to all business except as to those cases the trial of which was already begun and continued before him. *State* v. *Carter*, 49 W. Va. 709; 23 Cyc. 611, 612, 613, and cases cited in notes. How is it as to unfinished business in the hands of such special judge? Does the appearance of the regular judge or the adjournment of the term at which the special judge is elected to

preside vacate the office of the special judge entirely? In *State* v. *Carter*, *supra*, it is said:     "The appearance of the regular judge would vacate the office of the special without an order to that effect, and if he was again absent on another day a new election for a special judge would be necessary. * * * When a special judge fails to attend, or being present declines to hold court when he should do so, he thereby vacates his office except possibly as to any unfinished business in his hands, and another person may be selected to hold court in lieu of the regular judge then absent. The election of a special judge is merely for the time being or for the disposition of a particular case or cases." There is in this case the suggestion that the appearance of the regular judge, or the absence of or declination to act of the special judge, would not vacate his office as to such unfinished business. In 23 Cyc. 612, 613, on the authority of the several cases cited in note 58, it is said:     "A special judge does not lose jurisdiction to complete the trial of a case because the regular judge returns during the trial, and resumes his duties." In *Bohannon* v. *Tabbin* (Ky.) 76 S. W. 46, 49, one of the cases cited in said note, a special judge was elected to preside, as in this case, in the absence of the regular judge. The court there says:     "The fact that the regular judge returned before the case was finally disposed of by the special judge in no wise nullified the jurisdiction of the latter. It would create inextricable confusion if, after a special judge, elected because of the absence of the regular judge, had commenced the trial of a case, his jurisdiction to further try it should be ousted by the return of the regular judge. It needs no argument to demonstrate the hardship and expense to litigants which would arise upon the adoption of such a principle." *State* v. *Moberly* (Mo.), 26 S. W. 364, decided that, "Where a special judge was called in, at the request of the regular judge, and for a time presided in a case, he acquired jurisdiction to try the case, which could not be divested by the regular judge, and the fact that the latter completed the trial is ground for reversal." But on the authority of *Hyllis* v. *State*, 45 Ark. 478, and our own case of *State* v. *Carter*, *supra*, the rule of the case just quoted is modified by the condition, "unless the special judge was selected to preside only during the regular judge's absence."

Our case, however, will not support such an exception to the general rule, when applied to the trial of a case already begun by a special judge, for as already stated, it is there indicated that the return of the regular judge would not oust the special judge of jurisdiction to try and finally dispose of any case begun before him. Whether such jurisdiction would end with the term at which such special judge was elected we need not decide, for the question does not arise, all the proceedings here involved having occurred at the same term of the court. We have decided in *Carper* v. *Cook*, 39 W. Va. 346, that a special judge so elected retains jurisdiction to sign bills of exceptions in a case tried before him, within thirty days after the adjournment of the term. But seeing there must be a reversal of the judgment on other grounds, and as the question will arise in the further proceedings in the case, it is proper, we think, that we should intimate the opinion that the jurisdiction of a special judge elected, not to try any particular case, but to preside only in the absence of the regular judge, does end for all purposes with the adjournment of the term at which he was elected, except as to the matter of signing bills of exceptions in cases tried and finally determined by him. Authorities do hold, however, that such special judge may adjourn the hearing of a case beyond the regular term without losing jurisdiction thereof. 23 Cyc. 612, and cases cited in note 54. The fact that the term of a regular or special judge has ended or expired before a trial begun is completed will not preclude his successor, the regular or newly elected judge, from trying the case, but he would have to try it *de novo*. 23 Cyc. 565. It is said at the page just cited, on the authority of *Clayton* v. *Ryan*, 14 Colo. 419, and *In re Sullivan*, 143 Cal. 462, that, "A judge who did not hear the evidence cannot render a judgment in a cause notwithstanding the testimony may have been written down and preserved."

In answer to the second inquiry, it is argued that as the prisoner had withdrawn his plea of not guilty, after being warned by court and counsel of the effect thereof, and voluntarily entered his plea of guilty of murder in the first degree as charged in the indictment, without offering anything in mitigation of his crime, and as this plea was tendered to the court and not personally to the special judge

presiding at the time, it was perfectly competent for the regular judge, on appearing, to pronounce the judgment of conviction and sentence complained of, without further inquiry as to the facts, the effect of a confession being to supply the want of evidence. In the able and well considered case of *Green* v. *The Commonwealth*, 94 Mass. (12 Allen) 155, it was ruled that the plea of guilty of murder in the first degree did have that effect, and, when tendered to a single justice, judgment of conviction and sentence, without the intervention of a jury to try the degree of the the crime might be pronounced against him, although without such plea, and upon a plea of not guilty in a capital crime, the trial could only be had, as provided by statute, before a full court composed of all the judges. The statute of Massachusetts, as does our statute, requires the jury to find the degree of the crime, and it was argued in that case, and decided adversely to the proposition, that as all murder was presumed to be murder in the first degree, the court could not accept the plea of guilty in the first degree; and as the jury in a trial of the issue on a plea of not guilty were required on the evidence to find the degree of murder, all the court could do was to accept the plea of confession, and empanel a jury to try the degree of the crime. Our statute, section 4584, Code 1906, provides that, "If the accused pleads guilty of murder in the first degree, sentence of death or confinement in the penitentiary for life shall be pronounced upon him by the court, as may seem right, in the same manner and with like effect as if he had been found guilty by the verdict of a jury." There is here given to the court a discretion either to pronounce judgment of death or imprisonment for life, certainly not an arbitrary discretion, but a reasonable discretion, and as may seem right. How is the court to be informed as to the right of the matter? The court's decision of this question is of the most vital importance to the prisoner. With him it is veritably a question of life and death. In this case the court presided over by the special judge had pursued the only practical method known to the law to inform itself as to what judgment should be rendered; it had in the presence of the prisoner examined the witnesses in open court, and the judge had taken further time to consider of the judgment

to be pronounced. If such proceeding is necessary to advise the court it is a part of the trial, and it follows as a necessary corrollary that it must take place in the presence of the prisoner, for we have held that the prisoner must be present during the whole of his trial, a constitutional right which cannot be waived or taken away from him by the court. *Younger* v. *State*, 2 W. Va. 579; *State* v. *Conkle*, 16 W. Va.-736; *State* v. *Sutfin*, 22 W. Va. 771; *State* v. *Greer*, *Id.* 800; *State* v. *Parsons*, 39 W. Va. 464; *State* v. *Sheppard*, 49 W. Va. 582-611. The statute, section 4567, Code 1906, provides that, "A person indicted for felony shall be personally present during the trial therefor * * *;" and as JUDGE BRANNON says in *State* v. *Parsons*, *supra*, "The great weight of authority is that he must be present when any step affecting him is taken from arraignment to judgment inclusive." If, therefore, as already stated, a judge who did not hear the evidence, cannot render a valid judgment in a cause notwithstanding the testimony may have been written down and preserved, or make any findings of fact in a cause tried by his predecessor, upon what principles can we sustain the judgment of conviction and sentence in this case? It is practically conceded by the attorney general on the authorities cited that the judgment must be reversed on this ground.

As to the third question, the motion of the prisoner to withdraw his plea of guilty, and plead anew his plea of not guilty and have a trial before a jury, no grounds for the motion were assigned. The motion was not made until the prisoner had been advised of the judgment against him upon his plea of guilty. Under such circumstances he would be quite willing to try his chances again before a jury. But this motion would, at least at that term, have been properly addressed to the special judge, engaged in the trial of the case. It is quite likely that the real ground of the prisoner's motion was his surprise at the severity of punishment, or that the special and regular judge should have made some investigation of the aggravating circumstances of his crime. It is no abuse of the discretion of the court, however, to refuse the withdrawal of a plea under such circumstances. 12 Cyc. 350, 351, 352, and cases cited. It is, generally speaking, a matter addressed to the sound dis-

cretion of the court, subject to review on writ of error, whether it will allow such a plea to be withdrawn. But in capital cases it is said in 4 Bl. Comm. 329, "The court is usually very backward in receiving and recording such confessions, out of tenderness to the life of the subject, and will generally advise the prisoner to retract it and plead to the indictment." If, therefore, the motion had been properly addressed to the proper trial judge, and overruled, no good ground for the motion appearing, the judgment could not be reversed on that account.

For the reasons assigned, we reverse the judgment of the criminal court, and entering such judgment as the circuit court should have entered, the case will be remanded to the said criminal court to be therein further proceeded with according to the principles announced and directions given herein.

*Reversed and Remanded.*