# CHARLESTON.

BARKER *et als.* v. STEPHENSON *et als.*

Decided May 10, 1910.

1. EXCEPTIONS, BILL OF—*Signing—Time.*
    1. The occurrence of a regular or special term of a circuit court within the thirty days after adjournment of the last preceding term does not cut off the time given the court, by section 9, of chapter 131, Code 1906, to make up and sign bills of exception.

2. SAME.
    The thirty days after adjournment of the term given the court by said section 9, chapter 131, Code 1906, to make up and sign bills of exception means thirty days after adjournment of the term at which final judgment is pronounced.

3. APPEAL AND ERROR—*Final Order—Motion to Set Aside Verdict—"Final Judgment."*
    A judgment or order overruling a motion to set aside a verdict

for defendant, and refusing plaintiff a new trial, is not such final judgment. The judgment to be final, in such a case, must be a judgment *nil capiat.*

4. TROVER AND CONVERSION—*Evidence—Directing Verdict.*
   A case in which the trial court erred in excluding plaintiff's evidence and directing a verdict for defendant.

Error to Circuit Court of Kanawha County:

Action by J. Q. Barker and others, partners, as the Kanawha Hardwood Company, against Samuel Stephenson and others. Judgment for defendants, and plaintiffs bring error.

*Reversed.*

*S. B. Avis, J. W. Kennedy,* and *Morgan Owen,* for plaintiffs in error.

*Chilton, MacCorkle & Chilton,* for defendants in error.

MILLER, JUDGE:

Plaintiff, as Kanawha Hardwood Company, sued defendants in trover and conversion for the value of about 250,000 feet of lumber, which, they allège, while they were in the actual possession thereof and in the act of branding and inspecting the same, defendants with force and arms and without their consent and against their protest seized, carried away and converted to their own use, damaging them in the sum of $15,000.

On the trial, concluded March 17, 1906, defendants offering no evidence, the court below, on motion of defendants excluded the plaintiffs' evidence and directed a verdict for defendants. Plaintiffs excepted, and moved the court to set aside said verdict and grant them a new trial, which motion was overruled, they again excepted. No judgment, however, was pronounced on the verdict until the September term following, when on October 6, 1906, plaintiffs moved the court to arrest the judgment. This motion being overruled, they again excepted, and final judgment was then pronounced that plaintiffs take nothing by their action, and that defendants go hence without day and recover their costs. Plaintiffs again excepted, and were given thirty days from the rising of the court within which to prepare and have signed proper bills of exception.

A term of court having been begun according to law before the thirty days expired, the bills of exception were not signed and made a part of the record in vacation, but the record shows

that by an order entitled in the cause, entered December 12, 1906, in term, plaintiffs' tendered their bills of exception numbered one and two, which were signed, sealed and certified, and properly identified and ordered to be made parts of the record.

Defendants interpose two objections here to a consideration of the case upon its merits. First, that judgment of March 17, 1906, directing a verdict, and overruling plaintiffs' motion to set aside that verdict and grant them a new trial, was a final judgment, and that no bills of exception having been taken or signed during that term, or within thirty days after the adjournment thereof, the court was without jurisdiction thereafter to certify the evidence, and make the same a part of the record. Second, that if wrong in their first contention, the statute, section 9, chapter 131, Code 1906, giving the court in vacation, within thirty days after adjournment of the term, authority to make up and sign bills of exception and certify the same, is exclusive, and that a special or a regular term occurring within thirty days after such adjournment cuts off the time given by statute and precludes the court at a succeeding special or regular term from any action on such bills of exception.

The first proposition is specifically negatived by numerous decisions of this Court: *Damron* v. *Ferguson,* 32 W. Va. 33; *Hannah* v. *Bank,* 53 W. Va. 82; *Bank* v. *Bee,* 60 W. Va. 386; *DeArmit* v. *Town of Whitmer,* 63 W. Va. 300; *Kirk* v. *Camden Interstate Ry. Co.,* 66 W. Va. 486 (66 S. E. 683). The judgment of March 17, 1906 was not final. It contained no judgment of *nil capiat;* therefore no writ of error would lie thereto. *Kirk* v. *Camden Interstate Ry. Co., supra,* citing *Riley* v. *Jarvis,* 43 W. Va. 44; *Parsons* v. *Snider,* 42 W. Va. 517; *Buehler* v. *Cheuvront,* 15 W. Va. 479. The statute, section 1, chapter 135, Code 1906, gives no right to a writ of error in cases like this except to a final judgment. The ninth clause thereof does give a writ of error to a judgment granting a new trial, but none is given from a judgment or order overruling a motion for a new trial. Until there has been a final judgment or decree, from which an appeal or writ of error will lie, the whole matter of controversy remains in the breast of the court. *Wickes* v. *B. & O. R. R. Co.,* 14 W. Va. 157, 165, citing 1 Rob. (Old) Prac. 638, and 3 Tho. Co. Lit. 323. Until such final judgment a complete trial has not been had. Section 2, chapter 159,

Code 1906, provides that "a person indicted for felony shall be personally present *during the trial therefor.*" In *State* v. *Stephenson,* 64 W. Va. 392, 399, following *State* v. *Parsons,* 39 · W. Va. 464, we held this meant from arraignment to judgment inclusive.

But it is argued·on the authority of *Crowe* v. *Corporation of Charles Town,* 62 W. Va. 91, and *Jordan* v. *Jordan,* 48 W. Va. 600, that the trial was·had at the term at which the order of March 17, 1906 was entered, and that according to these decisions the court was without jurisdiction, except during that term or within thirty days after its adjournment, to make up and sign bills of exception. The first point of the syllabus of ˙ *Crowe* v. *Charles Town* does say: "Bills of exceptions are required to be signed at the term at which the trial is had, or within thirty days after the adjournment thereof, and after the expiration of such time, there is no jurisdiction to sign such bills." But *Jordan* v. *Jordan,* as do many previous decisions, decides that bills of exceptions may be signed, either during the term at which final·judgment is rendered or within thirty days after its close. *State* v. *Strayer,* 58 W. Va. 676; *Welty* v. *Campbell,* 37 W. Va. 797, 802; *State* v. *McGlumphy, Id.* 805; *Griffith* v. *Corrothers,* 42 W. Va. 59. The case of *Crowe* v. *Charles Town* does not mean to depart from the prior decisions. Manifestly it was intended simply to reaffirm the rule of the previous decisions. "At the term at which the trial is had" according to *Jordan* v. *Jordan,* and the other decisions, means at the term at which final judgment was rendered.

The second proposition has been fully negatived by two decisions at the present term, not yet officially reported, namely, *Layne* v. *The C. & O. Ry. Co.,* 66 W. Va. 607, and *Jacobs* v. *Williams,* 67 W. Va. 377. Point one of the syllabus of the first case holds: "Bills of exception may be signed, certified and made a·part of the record of a trial, · at any time· within thirty days after the adjournment of the term at which the judgment in the action was rendered, either in vacation or in a special or regular subsequent term of the court, occurring within said period of thirty days." Point four of the syllabus of the latter case is as follows: "Intervention of a ·special term in the thirty day period, allowed for taking bills of exception after adjournment, does not shorten

said period nor deprive the court or judge of power to allow such bills. Within said period, they may be allowed either in court or in vacation." We must dispose of the case, therefore, on its merits.

Did the court err in excluding the plaintiffs' evidence and directing a verdict for defendants? The lumber in controversy, or that which it represents, was manufactured by defendants from timber taken from a tract of land originally containing something over ten thousand acres. This tract was in 1866, by decree of the Federal court, partitioned among the owners, five thousand acres thereof falling to those under whom defendants claim, and a triangular piece containing, exclusive of claims of prior occupants, about 1320 acres, and designated on the plat and in the record as the "Cole and Chapman" tract, going to Maria Byrne, under whom plaintiffs claim. The controversy here does not seem to involve title, but the true location of the original dividing line between the Byrne, or Cole and Chapman 1320 acres, and the five thousand acres, designated on the plat of surveyor Mathews, who made the survey in the partition suit, as the line "F. L. D." Mathews was a witness for plaintiffs on the trial and was examined and cross-examined with reference to the true location of this line as reported to the court in said partition suit. He proved what seems to be conceded, that his report called for eight dogwoods at the corner at "F"; "thence north 33° west 575 poles crossing same branch of Coal Fork to a white oak and black oak in a line of the Banks survey at D." Mathews swears positively that the eight dogwoods found on the ground by Johnson, one of plaintiffs' vendors, from the information furnished by him, and afterwards shown to him, are the identical dogwoods called for in his report in the partition suit, and are located on the ground at the point claimed by plaintiffs as the corner at "F". Other witnesses, including Johnson himself, corroborate Mathews on this material fact. It is conceded that if this line is where plaintiffs claim it, this lumber, or that which it represents, was the product of timber belonging to them or to Burdett Brothers and Johnson, their immediate vendors. Evidence was brought out on cross examination of plaintiffs' witnesses tending to show that plaintiffs, or their immediate vendors, had recognized another line, substantially the line claimed by defendants as the

true dividing line between the five thousand acre tract and the Cole and Chapman 1320 acre tract, but it is explained by them that this was merely a trial line run when they were trying to find the correct line.

The timber from which the lumber in controversy was manufactured is the same as that involved in the chancery cause of *Stephenson & Coon* v. *Burdett,* and others, decided here in October, 1904, and reported in 56 W. Va. 109. In that case jurisdiction in equity to determine the matters in controversy was denied and injunctions obtained by both parties were dissolved, and the bill and answer on which the injunction had been awarded were dismissed and relief denied. Pending that suit in the court below, two orders in evidence in this case, were made therein in June, 1902, the last being a consent order in modification of the first. By the first order the plaintiffs therein, Stephenson & Coon, on their motion and upon a bond of $20,000, with security, and conditioned as prescribed, were authorized to proceed with the manufacture and sale of the timber and lumber covered by the temporary injunction theretofore awarded upon the answer of Burdett Brothers and Johnson, and instead of paying the proceeds thereof to the parties designated in a prior agreement as trustees, to pay the same into the hands of the general receiver of the court. The second order provided that the "plaintiffs shall leave on the mill yard of A. W. Moses, manufactured and in condition for market and properly assorted, stacked and sticked, 250,000 feet of lumber coming off the territory in dispute as between plaintiffs and defendants Burdetts and Johnson, or to be substituted for lumber coming off said disputed territory by lumber from elsewhere said 250,000 feet of lumber to be of like kinds, grades, and of equal market value in the average, as that taken from said disputed territory, said 250,000 feet to be left and to be and remain on said mill yard subject to the defendant's said injunction, and to the future order of the court; but nothing either in the said order entered on the .... day of June, 1902, as aforesaid, or in this order, shall be construed as deciding or affecting in any wise, any question or rights as between plaintiffs and defendants Burdetts and Johnson, or of any of the parties to this suit, on the merits of the case; any violation of the terms of this order on the part of plaintiffs shall be taken

and construed as a violation of said defendants Burdetts and Johnson injunction heretofore awarded against the plaintiffs in this cause." It was clearly contemplated by the parties to this agreement that their rights would be adjudicated in that cause. But the court denying jurisdiction in equity to do so, and the bill being dismissed the parties were thereby left to their legal rights.

The plaintiffs in the present action claim right and title to the lumber in controversy derived immediately from Burdett Brothers and Johnson by contract in writing dated October 26, 1901; also by a verbal contract, the exact date of which is not shown, but confessedly after the 250,000 feet had been cut and stacked on the mill yard, and before the decision of said chancery suit by this Court. By the original or written contract in evidence Burdett Bros. & Johnson, after reciting their purchase from Cole and Chapman, of a certain boundary of timber on Coal Fork branch of Cabin Creek, and that they were desirous of selling the product of said timber, of the kinds and grades thereinafter mentioned to the plaintiffs, thereby, in consideration of one dollar and other valuable considerations thereinafter mentioned, sold and agreed to deliver to them on board cars Kanawha Railway Company, the poplar, red and white oak, basswood, ash and yellow linn of the grades and at the prices therein named, and not necessary to recite herein. This contract further provided that the prices named were subject to a discount of two per cent. for cash, when loaded on cars by order of the purchasers, but that should they desire said lumber to remain on stick longer than should be necessary for it to dry, then the value of such lumber was to be estimated in car lots of each grade and thickness and payment made, subject, however, to final measurement and grade when loaded on cars at the time of shipment, said lumber to be cut to their order as to length and thickness, and should the sellers desire it the contract provided that they should have the privilege of disposing of their cull oak and poplar for local building purposes.

The oral contract, as testified by Barker, who signed the written contract on behalf of plaintiffs, covered the 250,000 feet of lumber on the mill yard. He says plaintiffs were thereby to take the lumber, accept it on the yard, and that while there engaged in grading, measuring and branding it, and after they

had been thus engaged with their inspector from Thursday to some day in the following week, defendants, Stephenson and Coon, with their men went upon the mill yard and seized the lumber. Barker seems to admit, however, that neither their written contract nor their oral contract covered all the lumber to be taken off the land, but only certain grades specified in the written contract. On the other hand J. F. Burdett, one of the vendors, and a witness for plaintiffs, states that there was no modification of the written contract by the oral, except that plaintiffs were to take and accept the lumber on the mill yard in place of delivering it on the cars, and he explains that the written contract covered or was intended to cover all the lumber that was to be manufactured from the land, to be paid for according to the prices stipulated for the different grades.

No deeds showing title to the land or the various boundary lines thereof were offered in evidence. Plaintiffs apparently relied on the common source of title, their written and alleged oral contract for the timber and lumber, shown in evidence, and the evidence introduced by them on the true location of the division line between the two tracts of land, and upon this evidence rested their case. The question is, Did they make out a *prima facie* case, one entitling them to have the case submitted to the jury?

The position of defendants' counsel on this question is, first, that by their written executory contract with Burdett Brothers and Johnson plaintiffs did not buy the timber in place, but the lumber to be manufactured and delivered by the sellers on cars at the railway, and by which they acquired no legal title to the lumber on the mill yard on which they could maintain this action. The oral contract they say was simply to bolster up plaintiffs' case, and besides, that according to the evidence of Barker this contract changed the written contract, and that at most the oral contract according to his evidence was conditioned on the 250,000 feet of lumber being decreed to Burdett Brothers and Johnson, and that as the court did not in the chancery suit so decree the condition failed, and that their title to the lumber, by the very terms of the contract, failed also; that Burdett Brothers and Johnson might have sued but plaintiffs could not do so.

In each of these positions we think counsel are in error. It

is true plaintiffs did not buy timber, but lumber to be delivered. The contract did provide, however, that if plaintiffs should desire the lumber to remain on stick longer than should be necessary for it to dry, the value thereof should be estimated and paid for subject to subsequent inspection on delivery. But this is not important. The parties were competent to waive delivery on cars at the railroad, and accept delivery on the mill yard. Their evidence uncontradicted is that they did by their oral contract do so, and had actually taken possession of the lumber, and were engaged in inspecting, measuring and branding it, and had been so engaged for several days when defendants seized it. J. F. Burdett says plaintiffs not only accepted the lumber on the mill yard, but that by the oral contract they agreed to take the mill culls not covered by the written contract, and that there was no other modification of the written contract, except that they were to pay all expenses of delivering the lumber on board cars. He does not say what prices were to be paid for mill culls. One difficulty in the way has been the want of satisfactory evidence of the amount of the different grades of lumber called for in the original contract upon which the jury, by reference to the prices stipulated in the original contract, might have arrived at the proper verdict. We have concluded, however, that the jury might from the evidence reasonably have found some damages, and that the lack of more certain evidence did not warrant the court on this ground in directing a verdict for defendants.

We see little force in the argument that the oral contract was conditioned on a decree in favor of Burdett Brothers and Johnson. The parties to the contract evidently contemplated that their rights would be finally adjudicated in the chancery suit. The new conditions created by the two decrees therein called for a modification of the first contract, which they undertook to cover by their oral contract. Plaintiffs' rights under both contracts so far as the lumber to be stored on the mill yard by defendants was concerned necessarily depended on the right of their vendors to the lumber, which it was assumed would be finally adjudicated in the pending suit. Failing to obtain an adjudication of their rights in that suit the parties to these contracts have attempted to adjust the respective legal rights thereunder to the conditions in which they were left by

the result of the previous litigation. Burdett Bros. and Johnson affirm that plaintiffs are entitled under their contracts to the lumber in controversy, or at least to such rights thereto as but for the contracts they would have had. With what consistency then can defendants deny plaintiffs the right which they practically concede Burdett and Johnson would have. With this right we do not see that the question of possession, much discussed by plaintiffs' counsel in their brief, is important.

The record shows but one side of the case, and we express no opinion on the merits, but we are clearly of opinion that on the evidence submitted plaintiffs were entitled to have the case go to the jury, and that the court below erred in directing a verdict for defendants. We need not burden the opinion by citation of decisions previously decided by this Court prescribing the rule in such cases. The judgment will therefore be reversed and plaintiffs granted a new trial.

*Reversed.*