STATE *ex rel.* JOHN R. GROB

*v.*

REECE H. BLAIR, *Sheriff, etc.*

(No. 13404)

Decided April 1, 1975.

648

*Riley & Yahn, Robert A. Yahn and Arch W. Riley* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Richard E. Hardison*, Deputy Attorney General, *David P. Cleek*, Assistant Attorney General for defendant in error.

HADEN, CHIEF JUSTICE:

This is an appeal by John R. Grob from a final judgment of the Circuit Court of Ohio County discharging a writ of *habeas corpus ad subjiciendum* previously granted by this Court and made returnable to that circuit court.

The sole question to be resolved on this appeal is whether the circuit court erred in its ruling that the appellant's presence in a previous murder trial was not required at a meeting held in the court's chambers during trial to determine whether the State's principal witness wished to change the substance of testimony previously given which identified Grob as a perpetrator of the crime charged.

The circuit court ruled that the *in camera* hearing, conducted in the absence of Grob, was not a part of the trial proceeding and that it did not affect his rights. Appellant contends that his right to confront his accusers as guaranteed by Article III, Section 14, of the West Virginia Constitution; to be personally present at all proceedings at his trial, as guaranteed by West Virginia Code, Chapter 62, Article 3, Section 2; and his rights, as one accused of a crime, to due process of law as guaran-

teed by Article III, Section 10 of the West Virginia Constitution, and the Fourteenth Amendment to the United States Constitution, were violated when a meeting was held concerning testimony adduced at trial against him, in the judge's chambers, and in his absence.

Briefly, the facts show that during the course of Grob's murder trial, Barbara Clem, the State's primary witness, made a positive identification of appellant as one of two persons who perpetrated an assault upon Martin Luther Moss which resulted in Moss' death. On the day following the receipt of the criminating testimony, Miss Clem, then in protective custody in the Brooke County Jail, contacted her court-appointed attorney and informed him that she wanted to change her testimony concerning her previous in-court identification because she was not positive of the identification. Apprised of this, her attorney immediately contacted the Honorable Thomas P. O'Brien, the then judge of the trial court, of the intent of his client to change her testimony. The attorney was directed to meet with the court in chambers the following morning one-half hour in advance of the resumption of trial.

On the next morning, the attorney met with the trial judge and Miss Clem, who had been returned to the courthouse by a deputy sheriff of Ohio County. Grob's counsel and the prosecuting attorney had also been notified to be present in the court's chambers. Before their arrival, however, Miss Clem's attorney informed the court that he had had a second conversation with Miss Clem and it was her then intention not to recant her testimony, contrary to her expressions of the previous evening.

During the hearing which followed, this testimony was taken:

"MR. McCAMIC: At five-thirty last night I received a call from Barbara. Tell the Judge what you told me.

"MISS CLEM: I told him I wasn't sure of either of the two men.

"MR. McCAMIC: Did I ask you—did I go through it with you?

"MISS CLEM: Yes.

"MR. McCAMIC: What did you tell me?

"MISS CLEM: That I wasn't sure.

"MR. McCAMIC: What did you want to do?

"MISS CLEM: I want to change my testimony.

"MR. McCAMIC: I came over and talked to you, Your Honor.

"THE COURT: Yes, sir.

"MR. McCAMIC: And told you the problem. The Judge ordered you down here this morning. Now what do you tell me? I am not trying to force you into anything, but you are up and down. What did you tell me this morning?

"MISS CLEM: That I knew who they were, but I am afraid. I am afraid if he goes to Moundsville, he will have me killed.

"THE COURT: Who is going to do that?

"MISS CLEM: I don't know. I am afraid of him.

"THE COURT: Is that the only reason you are going to change your testimony?

"MISS CLEM: Yes.

"THE COURT: That's not sufficient."

When the foregoing testimony was taken, the appellant was not present. His counsel did not object to his absence. The prosecuting attorney noted defendant's absence at the hearing and, upon inquiry, was informed by the court that Grob's presence was not required.

The witness Clem was not recalled to the stand either by the State or by the defense. At the conclusion of trial,

the petitioner was convicted of first degree murder by a jury.

At the *habeas* hearing resulting in this appeal, Judge O'Brien was asked whether he considered the hearing concerning Miss Clem's intentions to recant testimony to be a part of John Grob's trial. He responded in the negative, and said: "[T]hey (the witness, counsel and court personnel) were purely there to determine whether or not there was to be a change of testimony."

On this and like testimony adduced at the *habeas* hearing, the State contended: first, the hearing in question was not a part of appellant's murder trial; and second, the matters covered at the hearing did not affect his rights. In a memorandum opinion filed concurrent with the order discharging the writ of habeas corpus, the Circuit Court of Ohio County wholly agreed with the State. That court concluded that the proceeding regarding the testimony of the witness Barbara Clem was not a part of the trial, and considering "the fact that the witness Clem did not appear at the Grob trial after her initial testimony was heard ... the proceeding in question was not one that affected the outcome of petitioner's trial and consequently would not be one that affected his legal or constitutional rights. Therefore, the petitioner's presence was not necessary."

The right to confront one's accusers is guaranteed by Article III, Section 14 of the West Virginia Constitution. In all trials of crimes, "the accused shall ... be confronted with the witnesses against him." *Id.* Comparatively, the right of an accused charged with a felony to be present in person at every stage of a criminal trial when anything is done to affect him was a common-law right which antedated our Constitution. *The State v. Conkle*, 16 W. Va. 736, 746 *et seq.* (1880); *Younger v. The State*, 2 W. Va. 579 (1863). The right of presence has been secured by statute in the Virginias since 1849. *State v. Vance*, 146 W. Va. 925, 936, 124 S.E.2d 252, 258 (1962). Unchanged, it is now found in West Virginia Code 1931, 62-

3-2: "A person indicted for felony shall be personally present during the trial therefor."

With sound basis, courts and commentators have noted that there is a distinction of significance between the constitutional right to confront witnesses at trial and the statutory right, founded in the common law, of presence. *Snyder v. Massachusetts*, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934); *State v. Vance, supra*, 943 (Dissent, Calhoun, J.); Comment, 65 W. Va. L. Rev. 50 (1962); Annots., 25 L. Ed. 2d 931 (1971); 23 L. Ed. 2d 853 (1970).

The essence of the constitutional right has been stated as follows:

> "Confrontation in criminal law has been defined as the act of setting a witness face-to-face with the accused so that the latter may make any objection he has to the witness and the witness may identify the accused, and this must take place in the presence of the court having jurisdiction to permit the privilege of cross-examination." 21 Am. Jur. 2d, *Criminal Law* § 334 (1965).

*See, Douglas v. Alabama*, 380 U.S. 415, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). The main and essential purpose of confrontation is to secure to the accused the opportunity of meaningful cross-examination, "which cannot be had except by the direct and personal putting of questions and obtaining of immediate answers." 21 Am. Jur. 2d, *Criminal Law* § 333 (1965); *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). See *State v. Greer*, 22 W. Va. 800 (1883).

On the other hand, the right of presence is broader in aspect and scope than the right of confrontation because of the original reason for its existence:

> "In English history, a prisoner in a felony trial had no right to the advice and assistance of counsel. The accused was required to defend himself and it was held that he must be present in court when any step was taken in his case,

regardless of how insignificant it was." Comment, 65 W. Va. L. Rev., at 51 (1962).

As noted in that comment, this old English rule was adopted early in the Commonwealth of Virginia, carried forward into the law of this State and usually has been applied as strictly as it was in eighteenth century England when an accused felon had no counsel except himself. See e.g., *Sperry v. Commonwealth*, 9 Leigh 623 (1838); *Jackson v. Commonwealth*, 19 Grat. 656 (1870); *State v. Sheppard*, 49 W. Va. 582, 39 S.E. 676 (1901); *State v. Howerton*, 100 W. Va. 501, 130 S.E. 655 (1925); *State v. Vance, supra.*

In this jurisdiction, the distinction between the constitutional right of confrontation and the right of presence has not been observed. To the contrary, the legal differences have been obliterated by the characterization of the statutory right as an "inalienable right" or as a "constitutional right." See, *State v. Howerton, supra; State v. Grove*, 74 W. Va. 702, 82 S.E. 1019 (1914); *State v. Sheppard, supra;* accord: *State ex rel. Boner v. Boles*, 148 W. Va. 802, 137 S.E.2d 418 (1964). Treated in this light, the statutory right has been held to be mandatory, not subject to waiver, and where the accused's absence during trial has been shown the statute was applied in his favor without necessity of demonstrating prejudice to the accused. *State ex rel. Boner v. Boles, supra; State v. Vance, supra; Dye v. Skeen*, 135 W. Va. 90, 62 S.E.2d 681, 24 A.L.R.2d 1234 (1950); *State v. Martin*, 120 W. Va. 229, 197 S.E. 727 (1938); *State v. Howerton, supra; State v. McCausland*, 82 W. Va. 525, 96 S.E. 938 (1918); *State v. Snider*, 81 W. Va. 522, 94 S.E. 981 (1918); *State v. Grove*, 74 W. Va. 702, 82 S.E. 1019 (1914); *State v. Sutter*, 71 W. Va. 371, 76 S.E. 811, 43 L.R.A., N.S., 399 (1912); *Barker v. Stephenson*, 67 W. Va. 490, 68 S.E. 113 (1910); *State v. Stevenson*, 64 W. Va. 392, 62 S.E. 688, 19 L.R.A., N.S., 713 (1908); *State v. Detwiler*, 60 W. Va. 583, 55 S.E. 654 (1906); *State v. Sheppard, supra; State v. Parsons*, 39 W. Va. 464, 19 S.E. 876 (1894); *State v. Greer, supra; State v. Sutfin*, 22 W. Va. 771 (1883); *The State v. Conkle, supra.* As summarized by Judge Haymond, speaking for the majority

of the Court in *Vance*, in those cases in which the absence of the defendant has been held to be reversible error:

> "[t]he controlling characteristic which differentiates the activities that occur in connection with the trial of a person indicted for a felony appears to be whether they occurred during the trial and affected his interest and ... not whether such activities prejudiced any right of the defendant." *Id.*, at 939 of the West Virginia Report.

Perhaps the strictest application of the right to presence was manifested by this Court's decision in *State v. Vance, supra*. In that case, the defendant, unbeknownst to the trial court, the prosecuting attorney and the defense counsel, voluntarily absented himself from the court's chambers during consideration of proposed instructions to be given the jury. After a period of a few minutes, he returned to the court's chambers, when his temporary absence was noted. On these facts and without any demonstration of prejudice, he was awarded a new trial by this Court because of the "technical" violation of the statute. *Id.*, at 939 of the West Virginia Report. A prior decision, *State v. McHaffa*, 110 W. Va. 266, 157 S.E. 595 (1931), on almost identical facts, was implicitly overruled by the holding in *Vance*. The *McHaffa* case had held that the absent defendant was not prejudiced when court and counsel discussed an instruction, later given to the jury, which benefited the accused.

In *Sheppard*, the defendant was temporarily absent during the preliminary questioning of a female witness who was asked merely, "What is your name please?" and "What is your husband's name?" The defendant was then brought into the courtroom and the witness was asked the same questions and repeated the same answers. No objections or exceptions were taken to his absence. Nevertheless, this Court granted a new trial and reasoned at page 614 of the West Virginia Report:

> "[I]t is clearly a matter of no consequence that the evidence introduced in this case in the ab-

sence of the prisoner may not have affected him and that he did not at the time take an exception. To be present during every part of the trial was a constitutional right which he could not waive".

The *Vance* decision illustrates that the accused has been accorded the statutory right even though he voluntarily absented himself from the trial and, through his counsel, was present to protect his interest while matters of law were being considered. The *Sheppard* case illustrates that even *pro forma* inquiry into facts from a witness in accused's absence has been held reversible error. In the extreme, these decisions demonstrate that, if anything was done affecting the accused in his absence, neither the salutary principle of waiver nor the equally settled principle of harmless constitutional error would save the State's conviction.

On the other hand, several decisions of this Court have refused to reverse a conviction for the reason that the accused was absent during an occurrence in trial proceedings. In *State v. Davis*, 153 W. Va. 742, 172 S.E.2d 569 (1970), we held the statute did not require the defendant's presence when the trial judge directed entry and recordation of the order reciting the proceedings had at trial. *State v. Hill*, 120 W. Va. 582, 200 S.E. 587 (1938); accord, *State v. Hoke*, 76 W. Va. 36, 84 S.E. 1054 (1915). The defendant's presence was not required in *State ex rel. Burkhamer v. Adams*, 143 W. Va. 557, 103 S.E.2d 777 (1958), when the trial judge considered the matter of fees payable to court-appointed physicians and entered an order providing for payment of these fees, this Court finding no prejudicial error from defendant's absence. In the case of *State v. Blankenship*, 137 W. Va. 1, 69 S.E.2d 398 (1952), no reversible error was found where the accused's attorney left the defendant in court and departed from the courtroom to strike the names of two jurors from the list of twenty called, this Court reasoning that while the attorneys may have been temporarily absent from trial, defendant was not. Similarly, the Court held in *State v. Roberts*, 122 W. Va. 536, 11 S.E.2d 172 (1940),

that defendant was not prejudiced when the circuit clerk corrected a jury list in defendant's absence during trial and then submitted the list to defendant's counsel for the purpose of "striking." Likewise, the Court held in *State v. Lucas*, 103 W. Va. 743, 138 S.E. 393 (1927), that the calling of the names of twelve jurors empaneled before they were sworn in the absence of the accused was not prejudicial error. Although recognizing the strict requirement of presence, the Court also refused to reverse a conviction because nothing was done to affect defendant when, in his absence, the trial judge invited the defense counsel to renew and elaborate upon arguments previously made at the overruling of defense's motion for a new trial. *State v. Parsons*, 39 W. Va. 464, 19 S.E. 876 (1894).

In each of the foregoing cases, and in the *McHaffa* case, *supra*, involving instructions, the Court considered and rendered its decision based upon whether the accused was prejudiced or whether anything was done affecting him in his absence. It appears that the concepts of "prejudice" and "anything done affecting him" were considered interchangeably and synonomously in the ascertainment of whether error (defendant's absence) was to be considered reversible or harmless. The concept of prejudice was also applied where this Court reversed defendant's conviction and held that the accused's presence was required during the *voir dire* interrogation of prospective jurors. *State v. Martin*, 120 W. Va. 229, 197 S.E. 727 (1938).

The review of the decisions of this Court previously discussed illustrates several things. First, this Court has not distinguished the constitutional right of confrontation and the common-law/statutory right of presence. Secondly, the Court, while extending constitutional protections, has always interpreted and applied the statutory language without explicitly recognizing Article III, Section 14 of the West Virginia Constitution. Third, in applying the statutory right to differing factual situations, the Court has ignored the concept of prejudice and found reversible error on technical violations of the stat-

ute in one line of decisions; and in another, but irreconcilable, line of decisions, has applied the concept of harmless error and found that the accused's rights were not affected. The law had its origins in antiquity and, yet, today is unsettled.

In this appeal the Attorney General implies that John Grob's counsel waived the accused's right to be present in the *in camera* hearing conducted to determine whether Barbara Clem would recant her criminating testimony. The *Boner, Vance, Grove* and *Sheppard* decisions, previously discussed, held that the right of presence is inalienable and cannot be waived. These decisions do not "square" with modern applications of constitutional law and public policy and must, in that respect, be disapproved. An accused, by declaration and conduct, may waive a fundamental right protected by the Constitution, if it is demonstrated that such waiver was made knowingly and intelligently. *State v. Blosser,* ____ W. Va. ____, 207 S.E.2d 186 (1974). By statute, an accused may waive the right to confront his accusers, and all the incidents of trial, if he chooses to plead guilty to the crime charged. *W. Va. Code* 1931, 62-3-1a, as amended. Nevertheless, on the record of this case, John Grob did not, by word or deed, waive his right to be present at the Barbara Clem hearing, *in camera*:

> "In felony cases the accused must be present *in his own proper person* from the inception of the trial upon the indictment to the final judgment inclusive, when anything is done affecting him; and the record must show his presence." (Emphasis supplied). Part *syllabus* point 2., *State v. Parsons, supra.*

Again, by implication, the State contends that Grob's absence at the Clem hearing did not affect his rights, and was harmless error, because the witness did not take the stand against him again during trial. In support of this proposition the appellees rely upon *State v. Davis, supra,* and those like decisions which were determined upon whether defendant was prejudiced, i.e., whether anything was done to affect him. This is the

correct approach. The doctrine of harmless error is firmly established by statute, court rule and decisions as a salutary aspect of the criminal law of this State. See *W. Va. Code* 1931, 62-2-11; *State v. Wilson*, ___ W. Va. ___, 202 S.E.2d 828 (1974); *State v. Riley*, 151 W. Va. 364, 151 S.E.2d 308 (1966); *State v. Musgrave*, 109 W. Va. 247, 153 S.E. 515 (1930). In a constitutional context, the doctrine is also applied because appellate courts are not bound to reverse for a technical violation of a fundamental right. *Spaulding v. Warden*, ___ W. Va. ___, ___ S.E. 2d ___ (Case No. 13489, decided: March 18, 1975); *State v. Thomas*, ___ W. Va. ___, 203 S.E.2d 445 (1974); *State v. Britton*, ___ W. Va. ___, 203 S.E.2d 462 (1974). As is recognized in *Thomas*, the test for harmless constitutional error, promulgated by the United States Supreme Court, is whether the apparent error did not, beyond a reasonable doubt, prejudice the accused at trial.

We disapprove the rigid and inflexible rule of the *Vance* case and its progenitors which held that prejudice is not a necessary element for reversal of a conviction when the defendant was absent during trial and something was done affecting him. It is illogical and it does not comport with either constitutional principles or justice to reverse an otherwise valid criminal conviction on a technicality. Henceforth, before an accused will be entitled to count his absence at a critical stage of the trial proceeding as reversible error, he must demonstrate a possibility of prejudice in the occurrence. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963).

Before this case is resolved, we must also answer the Attorney General's contention that the trial court's hearing in chambers was collateral to, and not a part of the accused's trial. Both the constitutional right of confrontation and the common-law/statutory right of presence are essentially protections accorded the accused at trial. Consequently, collateral hearings, although conducted by the same court in close time proximity to defendant's trial, should not be presumed to be trial

occurrences unless the accused may be affected by what transpires at such hearings. In this regard, the State relies upon *obiter dicta* in *State v. Pietranton*, 137 W. Va. 477, 72 S.E.2d 617 (1952) for the proposition that the Barbara Clem *in camera* hearing concerning her intention to change testimony did not constitute a part of the Grob murder trial. We do not agree that the case supports the State's position.

In *Pietranton*, this Court sustained a demurrer to the indictment charging the defendant, who was an attorney, with converting and withholding funds belonging to a client. The case was reversed on that point alone. In its review of the Pietranton trial, however, this Court became aware of numerous and shocking charges involving both attorneys and judges in alleged subordination of witness' testimony. Perhaps because of the unusual circumstances of that case, this Court opined, at length, that the trial court there was justified in deferring trial until it called and held an *in camera* hearing to determine whether prospective witnesses in the defendant's up-coming trial had been approached by a party or his counsel to modify their testimony in regard to the accused's alleged conduct respecting his aggrieved client. In that hearing, which was held immediately prior to the trial, and thereby delayed it, the trial court excluded both the accused and his counsel. On appeal, this exclusion was assigned as reversible error because of the requirements of *W. Va. Code* 1931, 62-3-2 and because some of the witnesses who testified at the *in camera* hearing later testified in chief against Pietranton.

With the perspective of hindsight, we cannot subscribe to the *dicta* of the *Pietranton* Court. That part of the case which spoke to the defendant's right to be present at all stages of the trial affecting him did not observe the overriding constitutional consideration to which an accused is entitled.

As noted in *Pointer v. Texas, supra,* and *Douglas v. Alabama, supra,* the purpose of the constitutional right of confrontation is to secure for the accused the mean-

ingful opportunity to cross-examine his accuser. When testimony of a primary prosecution witness is involved, the confrontation right converges with the presence right, if the accused was absent when the prosecution witness was questioned. We have that situation here. In this case, the reason for the continued existence of, and the invocation of, the constitutional right is apparent. If the State's principal witness recanted testimony, the prosecutor's case would likely fail of conviction. The accused's absence at the *in camera* hearing constituted a denial of his right to confront as accuser secured to him by Article III, Section 14 of the West Virginia Constitution.

From the perspective of the common-law/statutory right of presence, the presence of the accused is required at all stages of a felony trial, from arraignment to final judgment. *State v. Vance, supra; Dye v. Skeen, supra*; accord, *State ex rel. Boner v. Boles, supra*. The accused, however, is not entitled or required to be present at the grand jury proceedings before trial. *State v. Justice*, 130 W. Va. 662, 44 S.E.2d 859 (1947). Nor is the defendant required to be present after judgment when the judge directs entry and recordation of the order reciting the proceedings had at trial. *State v. Davis, supra; State v. Hill*, 120 W. Va. 582, 200 S.E. 587 (1938). On the basis of more recent decisions of this Court, recognizing the due process test applied by the Supreme Court of the United States, we will now accord the right to the accused at any "critical stage in the criminal proceeding." See, e.g., *syllabus* point 3., *Spaulding v. Warden, supra*.

The testimony of Barbara Clem was directly related to the guilt or innocence of the defendant in his trial for murder. The witness' testimony had specifically identified the petitioner as one of two perpetrators of the crime for which he was convicted. There is no doubt that it constituted a necessary link in the proof which resulted in the success of the State's prosecution. As such, a hearing to assess the validity of such testimony, whether recorded as a technical part of the trial or considered

by its participants as an independent collateral proceeding, is a critical stage occurrence had after arraignment and before termination of the defendant's trial. It "affected his rights" and thus satisfies the test requiring presence.

Obviously, the trial court considered the potential recanting of eye-witness identification of the accused to be of real significance. Before resuming trial, the judge directed the taking of supplemental testimony of the State's prime witness, out of the presence of the jury, concerning her present intentions to recant or affirm her material testimony indicative of appellant's guilt. When the State's primary witness manifests an intention first, to recant testimony directly linking the accused to the commission of the crime, and then a contrary intention to reaffirm such testimony before the court and the prosecuting officer for the State,—all being done without the necessity of directly confronting the defendant whom she accuses—, it appears we are presented with the factual situation which illustrates the reason for the constitutional requirement and continued existence of the statute requiring presence. However, characterized by the language or the subjective intentions of the trial judge, the hearing which was conducted in regard to Miss Clem's testimony is regarded by this Court as a part of the trial requiring the presence of the defendant. *State v. Greer, supra; accord, State v. Sheppard, supra.*

For these reasons, we reverse the final judgment of the Circuit Court of Ohio County, vacate and declare void John Grob's conviction of murder in the first degree.

The discharge of the appellant from his present confinement is without prejudice to the right of the State to take further proceedings against him in a constitutionally permissible manner within a period of thirty days from this date.

*Reversed.*