# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

October 4, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Warren Franklin and Charles Franklin,**
**Petitioners Below, Petitioners**

**vs)   No. 12-1288** (Kanawha County 02-MISC-160 and 02-MISC-163)

**Jim Rubenstein, Commissioner, West Virginia**
**Division of Corrections, and David Ballard, Warden,**
**Mt. Olive Correctional Complex,**
**Respondents Below**

## MEMORANDUM DECISION

Petitioners Warren Franklin and Charles Franklin, appearing *pro se*, appeal the order of the Circuit Court of Kanawha County, entered September 13, 2012, denying their identical consolidated petitions for a writ of habeas corpus arising out of prison disciplinary proceedings that resulted from an October 2, 2002 demonstration at Mt. Olive Correctional Complex ("Mt. Olive").[1] Respondent Corrections Officials, by counsel John H. Boothroyd, filed a summary response. Petitioners filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners are two brothers who are inmates at Mt. Olive. Their prison history includes escaping from a prison in the State of Maryland and committing murder at the West Virginia State Penitentiary when it was located in Moundsville, West Virginia.

On October 2, 2002, a major demonstration occurred at Mt. Olive. The warden was advised of a demonstration started in the main yard by inmates at 8:30 a.m. At 9:17 a.m., the main yard was ordered closed. A Code Yellow-Emergency Count was issued at 9:30 a.m. Inmates were given an opportunity to return to their cells. Nonetheless, 278 inmates refused to return to their cells and remained in the main yard.[2] The warden then issued a state of emergency which was approved by the Commissioner of Corrections. The state of emergency remained in effect until October 17,

---

[1] According to respondents, the identical petitions were consolidated by the circuit court.

[2] Petitioners were not among the 278 inmates who were in the main yard. Petitioners were in Birch Hall when Mt. Olive was locked down.

-1-

2002.

During the lockdown and subsequent investigation into the demonstration, petitioners were placed in administrative segregation. During interviews, numerous inmates identified petitioners as having helped instigate and plan the October 2, 2002 demonstration. After the state of emergency was lifted, petitioners were issued violation reports charging them with "demonstrations" under Division of Corrections ("DOC") Policy Directive 325.00 which provided that "[n]o inmate shall organize, participate in the organization of, or participate in a group demonstration, protest, sit-down strike, 'sick-out', hunger strike, work stoppage or any other joint demonstration, or attempt to do any of the above." § 1.12.[3]

Separate disciplinary proceedings were conducted against both petitioners on October 25, 2002. Petitioner Warren Franklin was found guilty of violating § 1.12 and was sentenced to punitive segregation from October 2, 2002, to October 2, 2003 with a ninety-day loss of privileges and six months loss of "good time" credit.[4] Petitioner Charles Franklin was found guilty of being the "key person/organizer" of the October 2, 2002 demonstration and was sentenced to eighteen months of punitive segregation beginning October 2, 2002, with a ninety-day loss of all privileges and a one year loss of "good time."

After their terms in punitive segregation, each petitioner was placed in administrative segregation under Mt. Olive Operational Procedure # 3.31. Administrative segregation for Petitioner Warren Franklin was necessary in part because there were unresolved issues with inmate Russell Lassiter. According to his deposition testimony, Petitioner Warren Franklin believed that Inmate Lassiter had set him up regarding the October 2, 2002 demonstration and that placing him and Inmate Lassiter in the same general population would not be safe. Administrative segregation for Petitioner Charles Franklin was necessary in part because he had written letters that indicated his feud with Inmate Lassiter would end violently.

On January 5, 2004, Mt. Olive Operational Procedure # 3.31 was replaced by Operational Procedure # 3.36, the "Quality of Life" program. Petitioner Warren Franklin was placed at Level Three of the "Quality of Life" program.[5] Petitioner Warren Franklin completed Levels Three, Four, and Five and was released into the general population of Mt. Olive in the spring of 2005.

Petitioner Charles Franklin was also initially placed at Level Three of the "Quality of Life" program. However, in October of 2004, he was found guilty of violating § 1.19 of DOC Policy Directive 325.00, which prohibits the use and possession of drugs, intoxicants, or paraphernalia. Petitioner Charles Franklin was found with a cup of red liquid giving off a strong odor. The liquid

---

[3] The version of Policy Directive 325.00 then in effect was dated July 1, 2000.

[4] "Good time" is a statutory commutation of an inmate's sentence for good conduct based on each day the inmate serves his sentence. *See* W .Va. Code §§ 28–5–27(b) and (c).

[5] The "Quality of Life" program has five levels.

-2-

tested positive for alcohol content. Petitioner Charles Franklin was sentenced to sixty days of punitive segregation and a sixty-day loss of all privileges.

During the sixty-day loss of all privileges, Petitioner Charles Franklin made numerous phone calls and was, therefore, found guilty of additional disciplinary violations in November of 2004. In April of 2005, Petitioner Charles Franklin made an unauthorized phone call using his brother's DOC number and was, therefore, found guilty of an additional disciplinary violation. As a result of these disciplinary violations, Petitioner Charles Franklin was reduced from Level Three to Level One of the "Quality of Life" program. However, subsequently, Petitioner Charles Franklin completed the "Quality of Life" program and was released into the general population of Mt. Olive in May of 2006.

In April of 2002, petitioners filed identical petitions for a writ of habeas corpus seeking immediate release from segregation and return to a pre-detention status with the expungement of all disciplinary and administrative records since July 1, 2000. After each petitioner was released back into the general population, they altered their demands to include monetary relief for lost wages and pain and suffering. Petitioners were appointed counsel and were afforded the opportunity to present witnesses and documentary evidence. By an order dated August 10, 2007 the circuit court allowed the parties the opportunity to submit proposed findings of fact and conclusions of law.

On September 13, 2012, the circuit court entered an order submitted by respondent. The twenty-six page order contained numerous findings of fact and conclusions of law that addressed petitioners' various claims and found them to be without merit. The circuit court denied petitioners' petitions. Petitioners now appeal the circuit court's September 13, 2012 order.

We review the circuit court's order denying the petitions under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioners assert that their second attorney failed to submit proposed findings of fact and conclusions of law as allowed by the August 10, 2007 order. Petitioners assert that they attempted to communicate with their attorney to no avail. Petitioners also requested that the circuit court appoint new counsel. The circuit court did not appoint new counsel; instead, it entered an order denying the petitions that was proposed by respondents. Petitioners assert that they were not served with a copy of the proposed order before it was entered. Petitioners argue that their due process rights were violated by their second attorney's failure to submit proposed findings of fact and conclusions of law and by the circuit court's failure to appoint them new counsel.

Respondents note that petitioners were represented by their first attorney up until the time all evidence was submitted and that petitioners state that the first attorney performed his duties professionally. The only task remaining for the second attorney was to review the transcripts and propose findings of fact and conclusions of law on petitioners' behalf. While the second attorney did not submit proposed findings of fact and conclusions of law, respondents assert the circuit court was fully capable of reviewing evidence, canvassing the law, and then applying the law to the facts of this case. Respondents argue that the circuit court had a strong factual and legal basis to deny the petitions. Respondents note that no general right to counsel exists in habeas cases that challenge the terms and conditions of confinement. Respondents argue that the circuit court's order denying the petitions should be affirmed.

"Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975). Petitioners contend that their constitutional rights to due process of law were violated by the manner in which their case was conducted after the submission of all evidence.[6] However, after reviewing the circuit court's September 13, 2012 order that set forth in detail the circuit court's factual and legal basis for denying the petitions, this Court finds that any error was harmless beyond a reasonable doubt because petitioners cannot demonstrate that the outcome of their habeas cases would have been different even if their second attorney had submitted proposed findings of fact and conclusions of law.[7] Therefore, after careful consideration, this Court concludes that the circuit court did not abuse its discretion in denying the petitions.

Having reviewed the circuit court's "Order Denying Petition for Writ of Habeas Corpus," entered September 13, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

---

[6] In their reply brief, petitioners complain that the circuit court restricted their personal access to materials produced during discovery. However, petitioners further indicate that their first attorney, who adequately represented their interests, had permission to handle and possess discovery materials. Therefore, petitioner's late complaint about how discovery was conducted lacks substantial merit.

[7] Similarly, even if there was a general right to counsel in habeas cases that challenge the terms and conditions of confinement, petitioners would not be able to meet the applicable standard to show that their second attorney was ineffective by failing to submit proposed findings of fact and conclusions of law. *See* Syl. Pt. 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995) ("In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; *and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.*") (Emphasis added.).

For the foregoing reasons, we find no error in the decision of the Circuit Court of Kanawha County and affirm its September 13, 2012 order denying the petitions.

Affirmed.

**ISSUED:** October 4, 2013

**CONCURRED IN BY:**
Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II